**Angelo TELESCO, Plaintiff-Appellant,**

v.

**TELESCO FUEL AND MASONS' MATERIALS, INC.; Dominick W. Telesco; William C. Telesco; Rose M. Telesco; Katherine Raymond; Theresa La Russo; and Elaine Blackman, Defendants-Appellees.**

No. 691, Docket 84–7807.

United States Court of Appeals,
Second Circuit.

Argued Feb. 6, 1985.

Decided June 18, 1985.

---

Robert R. Petrucelli, Bridgeport, Conn., for plaintiff-appellant.

Tobias Weiss, Stamford, Conn., for defendants-appellees.

Before PIERCE and MANSFIELD, Circuit Judges, and BARTELS, District Judge *.

BARTELS, District Judge:

Plaintiff-Appellant, Angelo Telesco, appeals from an order of the District Court of Connecticut (Ellen Burns, J.), granting defendants' motion to dismiss the present federal action under the doctrine of "exceptional circumstances" set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). This case arises out of a family feud involving a history of hostility, jealousy and vendetta litigation conducted in the Connecticut state court by appellant Angelo Telesco against the rest of his family and the corporation they own. The facts follow.

### STATE COURT ACTIONS

Until 1945, Canio Telesco, father of plaintiff Angelo Telesco and of defendants Dominick and William Telesco, owned and operated a fuel and construction supplies business in Connecticut. Upon his death in 1945, his sons—Angelo, Dominick, William and Anthony—organized a partnership to continue operation of the business, with all four brothers apparently taking an active part in the management and operation of the business and all drawing equal compensation for their services. In June, 1953, they incorporated the business as Telesco Fuel and Masons' Materials, Inc. Each brother held an equal one-fourth share and served as an officer, director and salaried employee of the corporation. Angelo received the title of Vice President, and Dominick, his older brother, served as President and Treasurer. When Anthony died in 1969, his interest passed to his wife, Rose, who did not immediately take any active role in the corporation, and the three surviving brothers continued to operate the business.

In the operation of the business Angelo and his brothers began to have serious disagreements and the conflict surfaced in 1978 when Angelo filed an action in the Connecticut State Superior Court against his brothers and the corporation, referred to by the parties and the district court as the "original action." The complaint in the original action is in two counts. Count one alleges generally fraud and gross mismanagement of the corporation by the defendants and in particular their failure to hold meetings, keep records, or seek approval for corporate actions, waste and diversion of assets, as well as failure to pay the plaintiff his share of corporate profits. Count two is a shareholder derivative action also alleging fraud and gross mismanagement, in addition to commingling and diversion of assets by Dominick. It also alleges Dominick's successful coercion of Angelo to execute a shareholder's agreement limiting transferability of shares and Dominick's attempt to coerce Angelo into signing a will hereafter mentioned. As relief the complaint seeks dissolution of the corporation, appointment of a receiver, an audit, an accounting, restitution, an injunction against Dominick's participation in the corporation, and any other relief warranted in the case.

* Of the United States District Court for the Eastern District of New York, sitting by designation.

According to appellant, the events leading to the suit were Dominick's efforts to edge Angelo out of the family business in retaliation for Angelo's refusal to execute a will under which Angelo's interest in the corporation would pass to his brothers rather than to his wife. Angelo, claiming that he was unable to obtain financial information from his brothers or the corporation in order to draw up his own will, and fearful of losing his proprietary interest in the company, retained counsel and brought suit.

After hearings held at various times during the period from November 20, 1978 to July 24, 1979, the Connecticut Superior Court ordered an audit of the business, which was conducted by Price Waterhouse at a cost of $122,000 to the corporation. In May, 1980, that Court issued a memorandum opinion denying Angelo's application for appointment of a temporary receiver and dissolution of the corporation. Defendants thereafter filed answers to the complaint and a motion for summary judgment on the second count. The Superior Court granted the motion based on its earlier, May, 1980 decision denying Angelo's request for preliminary relief. Angelo appealed to the Connecticut Supreme Court which, in August, 1982, reversed and remanded on grounds that it was improper for the Superior Court to decide the merits of the complaint based upon its earlier limited interlocutory hearing and decision of May, 1980, rendered before pleadings had closed. *Telesco v. Telesco*, 187 Conn. 715, 447 A.2d 752 (1982). As a result of the Connecticut Supreme Court's order, there has yet to be any decision on the merits of either count of Angelo's original action,

which is still pending in the Connecticut state court.[1]

While these proceedings in the original action were going on, hostilities between Angelo and his brothers increased on other fronts. In May, 1981, the directors, absent Angelo, held several meetings which Angelo unsuccessfully tried to restrain by court order. At these meetings the directors terminated Angelo as a salaried employee and removed him as an officer and director, replacing him with Rose, the wife of the deceased brother Anthony. The directors notified Angelo of these actions by letter, informing him he no longer had any business at the corporation and advising him to keep off the premises. Angelo nevertheless continued to visit the corporate offices and plant where he allegedly disrupted operations to the extent that at one point the police were called in. In response, the corporation and three shareholders—namely, Dominick, William and Rose—filed, in July, 1981, another action in the state court, referred to by the parties as the "injunction action," to enjoin Angelo's alleged acts of harassment and to keep him off the corporate premises. In that action Angelo raised as a defense the illegality of his termination as director, officer and employee of the corporation. The Superior Court of Connecticut issued a temporary restraining order against Angelo in April, 1982, but no final judgment had been entered at the time of Judge Burns' decision in the federal action.[2]

In addition to the original action and the injunction action, this internecine struggle has involved several other law suits in the Connecticut courts initiated by both sides against each other.[3] While not directly rel-

---

1. After remand by the Connecticut Supreme Court, the Connecticut court dismissed the original action for failure to prosecute and then reopened the case. Apparently that action has not proceeded due to defendants' objections to restoration of the case. Defendants' attorney stated at oral argument that he would drop objections to restoration if dismissal of the federal case were upheld. Our affirmance is based on the assumption that the parties can continue litigation on the merits in the state court.

2. Appellant's claim, in papers submitted to this Court, that the injunction action has terminated in a settlement, is not properly before us on the record. Even if true, this fact was not before the district court and, moreover, it is insufficient alone to affect our decision.

3. In the other cases, Dominick sued Angelo for defamation; in 1979 Angelo sued to enjoin alteration of corporate financial records; in 1982 Angelo sued to force the corporation to pay for repairs to his car, and the corporation sued

evant to this case, they indicate the extent to which the parties have used the courts as a forum in which to vent their deep hostilities.

## THE FEDERAL ACTION

In April, 1983, while the original and injunction actions were pending in the Connecticut Superior Court, Angelo moved his residence to New York State and, on June 8, 1983, filed the federal diversity action presently before this Court. The amended complaint, filed November 3, 1983, sets out three counts. The first is premised on the allegation that, despite the 1953 incorporation, the brothers continued to operate the business as a partnership in effect. It seeks a declaratory judgment that a de facto partnership exists among the three brothers and Rose, and charges that the others have breached their contractual and fiduciary duties under the alleged partnership. As relief Angelo demands specific performance of the partnership agreement, including an order reinstating him as officer, director and employee, back pay, an injunction, an accounting, appointment of a receiver and dissolution of the partnership, damages and other relief. The second count, brought as a shareholder's derivative action, seeks repayment of money owed the corporation by defendants as a result of alleged mismanagement and waste of assets by Dominick, William and Rose, as well as dissolution of the corporation and a receivership. The third count claims damages for the alleged illegal ouster of Angelo from the business and from the purported partnership by the others in breach of their contractual and fiduciary duties.

Defendants moved to dismiss the action or for summary judgment in light of the protracted state court proceedings on the same claims. The district court, while acknowledging that the usual grounds for abstention were not present, nevertheless held that, under the principles set out by the Supreme Court in *Colorado River Water Conservation District v. United States, supra,* the case presented "exceptional circumstances" warranting dismissal in favor of the concurrent state proceedings.

That court found that, despite differences between the pleadings in the federal and state court actions, Angelo essentially made the same claims and sought the same relief in both the state and federal courts. In particular it pointed to two issues assertedly raised for the first time in the federal case—the existence of a de facto partnership agreement allegedly violated by defendants, and the affirmative claim for reinstatement as an officer, director and salaried employee of the corporation. As to the partnership theory, the court held that although Angelo had not asserted the existence of a de facto partnership in the state court actions, the underlying events were the same and this assertion was merely an attempt to cast the same grievances in the form of a new legal theory. This conclusion was supported by the fact that while the legal theories asserted in the state and federal courts differed, the complaints nevertheless requested the same relief. Referring to the claim for reinstatement, the court found that while Angelo had not expressly asserted an affirmative claim for reinstatement in the state courts, the pleadings in the original action were such that the claim could be raised in that suit, and further, that the legality of the ouster had been expressly raised as a defense in the injunction action. The relief claimed in the federal court, the court added, was available under the general prayer for equitable relief in the original action in the state court. We agree.

Having concluded that the federal action essentially paralleled the state court actions, the district court detailed the exceptional circumstances present: (a) the state court action, instituted long before the federal case, had already involved five years of proceedings, including substantial discovery, hearings, and several interlocutory orders granting or denying injunctive and

Angelo and his son for the cost of corporation

gasoline taken by Angelo's son for his car.

other temporary relief. In contrast, the federal case involved no discovery or proceedings beyond the motion to dismiss and some motions to clarify the pleadings; and (b) while in the usual case of parallel proceedings in state and federal courts it is the state court defendant who brings the second duplicative suit in federal court, here it was Angelo, after moving to New York, who brought the federal suit, having failed to obtain results in his own state court action. Holding that these were exceptional circumstances, the court decided that in the exercise of "wise judicial administration," *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246, and under the principles set forth in that case, it should dismiss the federal case and leave the parties to their well-advanced state court litigation.

In his appeal, plaintiff asserts that his federal action raises issues distinct from those raised in state court and does not present exceptional circumstances warranting dismissal. For the reasons stated below, we affirm the dismissal.

### DISCUSSION

■ The sole question before us is whether this suit was properly dismissed in view of the pending state proceedings.[4] The merits of the case are not involved. In cases of concurrent state and federal jurisdictions it is axiomatic that the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. To this obligation there are, nevertheless, extraordinary and narrow exceptions where a countervailing in-

terest would be served by permitting the state court to adjudicate the controversy, *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959). These exceptions are incorporated in the doctrines of abstention.

■ "[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction," *Colorado River*, 424 U.S. at 816, 96 S.Ct. at 1245, and abstention from the exercise of federal jurisdiction is the exception, rather than the rule. *Id.* at 813, 96 S.Ct. at 1244. The abstention doctrines are generally confined to three narrow categories of cases which were outlined by the Supreme Court in *Colorado River*, 424 U.S. at 813–17, 96 S.Ct. at 1244–46. It is appropriate for the district court to abstain where (1) a federal constitutional issue is presented which might otherwise be mooted by a state court determination of pertinent state law. *County of Allegheny v. Frank Mashuda Co.*, 360 at 189, 79 S.Ct. at 1063; *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); (2) there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), or where federal review of the question would be disruptive of state efforts to establish a coherent policy in an area of public concern, *Burford v.*

4. We are not here considering concurrent jurisdiction as between two federal district courts where different considerations apply. *See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). Where the second parallel litigation is brought by the same party in two federal courts the basis for dismissing jurisdiction is not predicated upon the doctrine of abstention or exceptional circumstances but upon the general rule, as stated in *Semmes Motors, Inc. v. Ford Motor Company*, 429 F.2d 1197, 1203 (2d Cir.1970):

that in the absence of sound reasons the second action should give way to the first. See *Food Fair Stores, Inc. v. Square Deal Mkt. Co.*, *supra*, 187 F.2d 219 [D.C.Cir.1951].

To begin with, any exception for cases where the same party is plaintiff in both actions would entail the danger that plaintiffs may engage in forum shopping or, more accurately judge shopping. When they see a storm brewing in the first court, they may try to weigh anchor and set sail for the hopefully more favorable waters of another district.

*Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and finally (3) federal jurisdiction has been invoked to restrain state criminal or tax proceedings. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

This case does not fall within any of those categories, and dismissal cannot be supported under the doctrine of abstention in any of its forms. There are other principles unrelated to considerations of constitutional adjudication and comity underlying the doctrines of abstention, which govern the exercise of concurrent federal and state jurisdiction. These considerations, referred to as the "exceptional circumstances test," were first enunciated in *Colorado River, supra,* and subsequently reaffirmed in *Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).[5] As stated by the Supreme Court in *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246, "These principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' [citations omitted]." In referring to these principles the Court made it clear that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818, 96 S.Ct. at 1246.

For a complete understanding of the exceptional circumstances test, reference to the facts in *Colorado River* is appropriate. That case involved the McCarran Amendment, 43 U.S.C. § 666, an amendment to federal laws governing the allocation of water rights and resolution of disputes relative thereto, which permits the federal government to be joined as defendant in state court adjudication of water rights. In that case there were comprehensive proceedings in the Colorado Water Division 7 in which the federal government was participating. Nevertheless, the federal government itself brought suit in federal court, on behalf of itself and certain Indian tribes, to settle water rights against some 1,000 private water users. The district court dismissed the federal action in favor of the state proceedings. The Supreme Court affirmed, emphasizing the danger of piecemeal litigation which the McCarran Amendment sought to avoid, and several other factors such as the absence of any proceedings in the district court other than the motion to dismiss; the extent to which state water rights were involved; the 300-mile distance between the district court and the state court; and the government's existing participation in the state court proceedings.

Finding the doctrine of abstention inapplicable, the Court then identified factors to be considered in applying the exceptional circumstances test, explaining:

> It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts.... In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; ... the desirability of avoiding piecemeal litigation; ... and the order in which jurisdiction was obtained by the concurrent forums.

*Id.* [citations omitted].

In *Moses H. Cone Memorial Hospital v. Mercury Const., supra,* the Court reviewed and reaffirmed the test applied in the *Colorado River* decision.[6] In *Cone* the hospital sued in state court for a declarato-

---

**5.** This court has previously discussed application of the exceptional circumstances test in *Giardina v. Fontana,* 733 F.2d 1047, 1052–53 (2d Cir.1984) (no exceptional circumstances warranting dismissal); and *Levy v. Lewis,* 635 F.2d 960, 965–67 (2d Cir.1980) (dismissal affirmed under *Burford* abstention, *Younger* abstention, and alternatively under *Colorado River* ).

**6.** There was some question subsequently as to whether the exceptional circumstances test was viable. *See* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 4247 at 156–61 (Supp.1985).

ry judgment regarding rights and liabilities under a contract between it and Mercury Construction which had built an addition to the hospital. Shortly thereafter, Mercury brought its own suit in federal court to compel arbitration under § 4 of the federal Arbitration Act, which action the district court stayed pending resolution of the state court suit. The stay was appealed to the Supreme Court.

In reviewing the exceptional circumstances test, the Court added two new factors to those set out in *Colorado River*: whether state or federal law supplies the rule of decision, 460 U.S. at 23–26, 103 S.Ct. at 941–942, and whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Id.* at 26–27, 103 S.Ct. at 942–943. Applying the *Colorado River* factors, along with the two new factors, to the case before it, the Court found that the balance of circumstances weighed against staying the federal proceedings. Specifically, the Court found that the possibility of piecemeal litigation was the unavoidable result of the Arbitration Act's command that certain issues be sent to arbitration; that the federal suit "was running well ahead of the state suit" at the time the district court refused to adjudicate the case; that federal law provided the rule of decision, a factor which "must always be a major consideration weighing against surrender;" and finally, that the state court might not provide adequate relief since it was unclear that the state court was bound by the relevant provision of the Arbitration Act.

In applying the exceptional circumstances test, it is relevant to note the warnings of both *Colorado River* and *Cone* that this test is not subject to precise rules, but rather should "be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Cone*, 460 U.S. at 21, 103 S.Ct. at 939. In *Cone, id.* at 16, 103

S.Ct. at 937, the Court, in repeating the warning in *Colorado River*, stated:

> [T]he decision whether to dismiss ... does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.

■ In applying these factors to the circumstances of this case we hold that on balance there were sufficient grounds for the dismissal of the existing federal action. To begin with, the federal and state actions are essentially the same. Appellant contends that he has raised a new legal theory set forth in the federal complaint, *i.e.*, the existence of a de facto partnership governing the parties' relationships. He further asserts that this new legal theory together with his affirmative claim for reinstatement as a director, officer and employee, constitute a new cause of action not raised in the state courts and consequently that these distinctions between the federal and state actions entitle him to remain in the federal court. The fact, however, remains that in its essential elements the same cause of action, regardless of theory or pleadings, is asserted in both courts. Thus, the federal action does in fact duplicate the state litigation, as appears from the following: (a) Angelo's federal complaint, based on the alleged partnership, concerns the same events and seeks the same relief requested in the original state court action, and there is no reason to believe Angelo cannot raise this theory in the pending original action.[7] Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit. *See Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 631–32 (11th Cir. 1984); *Berlitz Schools of Languages of*

---

7. *See* C.G.S. §§ 52–128, 52–130, 52–136, 52–137, 52–138. *See also Crowell v. Middletown Savings Bank*, 122 Conn. 362, 189 A. 172, 175 (1937) ("Our courts are liberal in allowing amend-

ments, and, unless there is sound reason for denying permission to amend, it should be granted.").

*America, Inc. v. Everest House,* 619 F.2d 211, 215 (2d Cir.1980); *Roach v. Teamsters Local Union No. 688,* 595 F.2d 446 (8th Cir.1979). *But see Crawley v. Hamilton County Commissioners,* 744 F.2d 28, 31 (6th Cir.1984) (state court proceedings not "parallel proceedings");[8] (b) with respect to his claim for reinstatement raised in the federal complaint, the district court correctly found that this issue could properly be raised in the state court under the pleadings of the original action and that the merits of this claim were before the state court in the injunction action. In other words, the federal case is an action, involving a novel legal theory, parallel to the pending state cases.

Moreover, the Connecticut state courts have had jurisdiction over the matters in this case far longer than the federal court. Angelo first sought redress in state court back in 1978 with the filing of his original action. Since that time there have been extensive, if inconclusive, proceedings in the original action, including substantial, costly discovery involving a $122,000 audit of the corporation, and several interlocutory decisions in the state court. In addition, the concurrent state proceedings found here include not one, but two state court suits raising the same issues asserted in the federal action. The second suit, the injunction action, like the original action, was commenced before the federal suit and likewise has involved more extensive proceedings than in the federal suit, including an interlocutory order granting a preliminary injunction. The federal suit, on the other hand, like that in *Colorado River,* has not moved beyond the initial pleadings and the motion to dismiss. With this history, it hardly seems wise to permit plaintiff to start anew in federal court.

Another added factor is that federal law does not provide the rule of decision in this case, but, on the contrary, it is provided by the state law involving a novel state law theory, *i.e.,* the existence of a de facto partnership, advanced by Angelo in support of his claim.[9] A further example that state law provides the rule of decision is attested to by the Fourth claim added to the present complaint in December, 1983. That claim raises the state law question of whether non-consumers may assert rights under Connecticut's Unfair Trade Practices Act, C.G.S. § 42–110b.

In *Cone,* the Supreme Court stated that it found "considerable merit" in the idea "that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River.*" 460 U.S. at 17 n. 20, 103 S.Ct. at 938 n. 20. The sequence of events in this case shows that the same party is plaintiff in both courts and sues in the federal court on the same cause of action after he has suffered some failures in the earlier state court action. This fact and the hostile history of the case strongly indicate the vexatious nature of the litigation. Accordingly, the conservation of judicial resources is a factor to be considered in determining the existence of exceptional circumstances justifying deference to a parallel state litigation.

CONCLUSION

While this case is close, we find it falls within the framework of the exceptional circumstances test. Upon carefully balancing all the factors, we conclude that the district court acted within its authority to

---

**8.** Appellees' citations to authorities and arguments based on principles of preclusion are inapposite since there has been in this case no prior judgment in either state or federal court concerning the merits of any of the matters presented here.

**9.** In applying the exceptional circumstances test, "the mere difficulty of state law does not justify a federal court's relinquishment of jurisdiction in favor of state court action." *Louisiana Power*

*& Light Co. v. City of Thibodaux,* 360 U.S. 25, 27, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058 (1959); *see Giardina v. Fontana,* 733 F.2d at 1053; *Smith v. Metropolitan Property & Liability Insurance Co.,* 629 F.2d 757, 762 (2d Cir.1980) (Mansfield, J., dissenting). Here, however, there is present the additional fact that there is a state forum already hearing these matters where the plaintiff may raise his novel theory.

dismiss this action in favor of the concurrent state proceedings.

Affirmed.