Robert BEST; Diane Best; B & D Pleasures, Ltd.; the Fundgeon; and Best Flying Services, Inc., Plaintiffs,

v.

The CITY OF NEW YORK, the New York City Police Department, Office of Midtown Enforcement, Edward I. Koch, Police Officer Frederick J. Llorens, Police Officer Evangelos Demetriou, Police Sergeant Tremmer and "Jane Doe" and "John Doe," fictitious named parties, true names unknown, the parties intended being New York City Police Officers and others who participated in the events alleged herein, Defendants.

No. 85 Civ. 4436.

United States District Court, S.D. New York.

April 19, 1986.

Kase & Druker, Garden City, N.Y., for plaintiffs; Paula Schwartz Frome, of counsel.

Gabriel Taussig, Virginia Waters, Lillian Krusz Welby, Ellen Henak, Asst. Corp. Counsels, for defendants.

EDWARD WEINFELD, District Judge.

Defendants move to dismiss or stay this action on the ground that the Court should decline to exercise jurisdiction and to dismiss the complaint for failure to state a claim upon which relief can be granted.

Pursuant to New York Public Health Law Article 23 and New York City Administrative Code, Chapter 16, Title C, the City of New York and the People of the State of New York ("the City") commenced an action in New York State Supreme Court, New York County, on May 16, 1984, against the owners, lessees, and operators of the "Fundgeon," an alleged house of prostitution advertised as a "dungeon for B & D/S & M fun and games." The City's complaint alleges that the Fundgeon constitutes a public nuisance and seeks permanent injunctive relief and damages of $1,000 for each day the nuisance was intentionally maintained. State Supreme Court Justice Jawn Sandifer granted the City's *ex parte* application for a temporary restraining order closing the Fundgeon on May 16th. The City's motion for a preliminary injunction was argued on May 30, 1984 and granted on June 5, 1984.

The owners and operators of the Fundgeon—defendants in the state court proceeding and plaintiffs in the instant action (collectively referred to as "B & D Pleasures")—filed an appeal in the Appellate Division, First Department, from the order granting the preliminary injunction and sought a stay of that order pending appeal. Their application for a stay was denied on June 21, 1984 and their appeal was never perfected. In the meantime, on June 8, 1984, B & D Pleasures served a verified answer to the City's complaint, asserting various counterclaims; the City replied on June 28, 1984. B & D Pleasures surrendered its leasehold on the second floor of 488 8th Avenue, where the Fundgeon had been located, in December 1984 and commenced this action in federal court on June 14, 1985.

Two months prior to the commencement of the state court proceedings, three Fund-

geon employees were arrested and charged with committing prostitution offenses. Those arrests were the basis, at least in part, for the City's nuisance allegations. In the state court counterclaims, B & D Pleasures alleges that the City has undertaken a program of harassment of the state court defendants consisting of an illegal search and seizure and the withholding of information from the state court to obtain the order closing the Fundgeon; the New York City police conducted an illegal search and seizure at the time of the arrests; and the City's actions violated their right to engage in a lawful business without being harassed, their right not to be deprived of their property without due process of law, and their right to be free from illegal searches and seizures.

■ "In cases of concurrent state and federal jurisdictions it is axiomatic that the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Telesco v. Telesco Fuel & Masons' Materials, Inc.,* 765 F.2d 356, 360 (2d Cir.1985) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)); *see also Cannady v. Valentin,* 768 F.2d 501, 503 (2d Cir.1985). Nevertheless, the Supreme Court has recognized that in cases in which the traditional abstention doctrines do not apply, there may be certain "exceptional circumstances" permitting federal courts to decline the exercise of their jurisdiction. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court elaborated on the factors to be weighed when deciding whether such exceptional circumstances exist, including: whether either court has assumed jurisdiction over property; convenience of one forum over the other; avoidance of piecemeal litigation; the order in which the courts obtained jurisdiction; whether federal or state law provides the rule of decision; and the adequacy of the state forum to protect the parties' rights. *See id.* at 15–16, 23–27, 103 S.Ct. at 936–37, 941–43; *see also Telesco,* 765 F.2d at 361–62; *Arkwright-Boston*

*Manufacturers Mutual Ins. Co. v. City of New York,* 762 F.2d 205, 210–11 (2d Cir. 1985). While the balance is weighted heavily in favor of the exercise of jurisdiction, a court must apply the factors in a "pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939. "[A] carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976).

■ A comparison of B & D Pleasures' state counterclaims with their federal claims demonstrates that the two actions are essentially the same. The federal litigation and the state counterclaims arise out of the same events—the arrests of the three Fundgeon employees, the accompanying search and seizure, and the commencement of the state court proceeding. While the federal complaint is more detailed than the state counterclaims, both allege violations of B & D Pleasures' constitutional rights.

The decisive factor in this case is the order in which the courts obtained jurisdiction. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939. Here, the state litigation was pending for over one year before plaintiffs commenced this action. Motions have been argued and some discovery has taken place in state court. By contrast, no discovery has occurred in this action and, with the exception of this motion by the City, no motions have been made by either of the parties.

More importantly, B & D Pleasures has a right to an immediate trial in state court which it has refused to avail itself of. It was entitled to a trial on the merits within three days of the entry of the preliminary

injunction order. *See* New York City Administrative Code § C16–2.6. Plaintiffs argue that they they elected not to go to trial in June 1984 because their important witnesses, the three arrested employees, would have invoked their Fifth Amendment right not to testify in view of the then pending criminal charges. What plaintiffs fail to explain is why they continued to forego an immediate state court trial in October and November 1984, after the criminal charges against two of the three employees had been dropped and before B & D Pleasures was forced to surrender its leasehold.

Plaintiffs make conclusory allegations that the state courts have failed to adequately protect their constitutional rights. What the record of the state court proceedings reveals, however, is not that the courts have disregarded the rights of those who had sex-related businesses in Times Square to further the objectives of a Times Square cleanup (*see* Frome Aff., para. 34), but that the plaintiffs are dissatisfied with the results they have achieved in state court. While the Court recognizes that the presence of federal law issues weighs heavily in favor of exercising jurisdiction, " 'the vexatious or reactive nature of either the federal or the state litigation' " is a factor the Court can consider when deciding whether to defer to state litigation. *Telesco*, 765 F.2d at 363 (quoting *Moses H. Cone*, 460 U.S. at 17 n. 20, 103 S.Ct. at 937 n. 20). Permitting these plaintiffs to proceed in federal court over one year after the state court action commenced for the simple reason that they are not happy with the outcome of the state litigation would only serve to encourage litigants to forum shop during the pendency of litigation.

After consideration of all the relevant factors,[1] the Court concludes that "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," compels the imposition of a stay of this action pending disposition of the state court litigation. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

So ordered.

---

1. Neither of the first two factors discussed in *Colorado River*, jurisdiction over property and convenience of the federal forum, applies in this case. To the extent the third factor, avoidance of piecemeal litigation, applies, it weighs in in favor of deferring to the state court. Even if the federal action proceeds, the City will be required to continue the state court action in order to have the opportunity to recover $1,000 for each day the alleged nuisance was intentionally maintained. *See* New York City Administrative Code § C16–2.3(b). The state courts have the power to award all of the relief sought by the City and by plaintiffs.