**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 12-1745**

───────────

MIDATLANTIC INTERNATIONAL, INC.,

             Plaintiff - Appellant,

     v.

AGC FLAT GLASS NORTH AMERICA, INC.,

             Defendant - Appellee.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Robert G. Doumar, Senior District Judge.  (2:12-cv-00169-RGD-FBS)

───────────

Submitted: October 16, 2012      Decided: November 14, 2012

───────────

Before DAVIS and KEENAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

───────────

Vacated and remanded by unpublished per curiam opinion.

───────────

James L. Chapman, IV, CRENSHAW, WARE & MARTIN, PLC, Norfolk, Virginia, for Appellant.  James N. L. Humphreys, William C. Bovender, Joseph B. Harvey, HUNTER, SMITH & DAVIS, LLP, Kingsport, Tennessee, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

MidAtlantic International, Inc. (MidAtlantic) brought this diversity action against AGC Flat Glass North America, Inc. (AGC) in the United States District Court for the Eastern District of Virginia following AGC's refusal to pay MidAtlantic for several thousand tons of dolomite. Invoking the abstention doctrine in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), the district court dismissed this action in favor of a related action in Tennessee state court which commenced before the federal action. Because we conclude that the federal action does not meet the criteria for Colorado River abstention, we vacate the district court's judgment and remand for further proceedings.

I

MidAtlantic is a Barbadian corporation with its principal place of business in St. Michael, Barbados. Prior to the commencement of the parties' litigation, MidAtlantic supplied dolomite to AGC, a Delaware corporation with its principal place of business in Alpharetta, Georgia. AGC used the dolomite as part of its glass manufacturing business.

The dolomite supplied by MidAtlantic was imported from Spain in bulk quantity by ship, stored in a warehouse in Norfolk, Virginia, and then placed in AGC-supplied rail cars at

- 2 -

the warehouse. The rail cars would then make their way to various factories operated by AGC. Each bulk shipment came with a certificate of analysis from the mine. AGC paid for the dolomite as each rail shipment was made. The written contract between the parties specified that if AGC ever stopped buying the dolomite "for whatever reason," AGC would pay MidAtlantic for any dolomite remaining in the warehouse within thirty days of the date of the invoice. (J.A. 5).

In June 2011, AGC arranged for the shipment of 8,267.38 tons of dolomite. The dolomite was stored in Norfolk with approximately 500 tons of dolomite still on hand from a prior shipment. A certificate of analysis for the June 2011 shipment was furnished to AGC. According to MidAtlantic, AGC raised no concerns about the test results, nor did they request further testing of the dolomite. Between June and December 2011, AGC purchased and used at its glass manufacturing facility in Kingsport, Tennessee approximately 4,000 tons of the dolomite from the June 2011 shipment. In December 2011, AGC notified MidAtlantic that there was spinel in the dolomite that exceeded specifications. Consequently, AGC refused to pay for the dolomite remaining in the warehouse in Norfolk.

On March 9, 2012, AGC filed a complaint in Tennessee state court (Sullivan County) against MidAtlantic asserting a claim for breach of contract based on nonconforming goods and a claim

for a declaratory judgment that it was not responsible to pay for the remaining dolomite in the warehouse in Norfolk. On March 30, 2012, MidAtlantic filed an action in the United States District Court for the Eastern District of Virginia seeking nearly $800,000.00 in damages for AGC's alleged breach of contract.

On April 30, 2012, AGC filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, arguing that the federal action should be dismissed either under the "first-to-file" rule, or, alternatively, under Colorado River abstention. The district court rejected the "first-to-file" argument as inapplicable because the two actions were not pending in separate federal courts. With respect to abstention under Colorado River, the district court held that exceptional circumstances were present warranting the surrendering of federal court jurisdiction. In particular, the district court identified three factors which, in its opinion, weighed heavily in favor of abstention. First, the district court found that the federal forum was inconvenient because the "the great majority of records, evidence, and witnesses pertaining to this case" were located in Tennessee at AGC's glass manufacturing facility. (J.A. 107). Next, the district court found that abstention was necessary to avoid piecemeal litigation involving the same parties and the same issues. Finally, the district

court found that abstention was warranted because the federal action was vexatious in nature, because MidAtlantic had not "offered [any] reason why this case should be tried in federal court rather than, or in addition to state court," and had "fail[ed] to provide any justification" or "even attempt to explain why it waited until after . . . AGC had filed the state court action to file the federal suit or, indeed, why it filed suit at all when the claims at issue were already pending in state court." (J.A. 109). As a result of its conclusion that Colorado River abstention was appropriate, the district court dismissed the federal action without prejudice. MidAtlantic noted a timely appeal.

II

On appeal, MidAtlantic contends that the district court erred when it abstained from entertaining its claim for breach of contract. We review the district court's abstention decision for an abuse of discretion. Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 464 (4th Cir. 2005).

It is well-settled that "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." Id. at 462. Indeed, "[d]espite what may appear to result in a duplication of judicial resources, '[t]he rule is well recognized that the

- 5 -

pendency of an action in the state [court] is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" McLaughlin v. United Va. Bank, 955 F.2d 930, 934 (4th Cir. 1992) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). Moreover, the Supreme Court has cautioned that federal courts are bound by a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817. As we noted in Chase Brexton, "[f]ederal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not." 411 F.3d at 462 (citation and internal quotation marks omitted).

The Supreme Court, however, has indicated that, in certain limited instances, "federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) (quoting Colorado River, 424 U.S. at 813). "These 'exceptional circumstances' inevitably relate to a policy of avoiding unnecessary constitutional decisions and of accommodating federal-state relations." Chase Brexton, 411 F.3d at 462.

In Colorado River, the Court noted that there were "principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern

in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." 424 U.S. at 817. According to the Court, these principles rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. (citation and internal quotation marks omitted). In general, the pendency of an action in state court is no bar to proceedings in federal court concerning the same matter. Id. As between two federal district courts, the general rule is that duplicative litigation should be avoided. Id. The Court explained that the difference in approach between federal-state concurrent jurisdiction and wholly federal concurrent jurisdiction stemmed from the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id.

In assessing whether Colorado River abstention is appropriate, we must remain mindful that this form of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and that "[a]bdication of the obligation to decide cases can be justified under [abstention] only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing

interest." Id. at 813 (citation and internal quotation marks omitted). Accordingly, our task "is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the surrender of that jurisdiction." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25-26 (1983) (citation and internal quotation marks omitted).

The threshold question in deciding whether Colorado River abstention is appropriate is whether there are parallel federal and state actions. Chase Brexton, 411 F.3d at 463. Here, MidAtlantic concedes that the federal action is parallel to the Tennessee state court action. Because the federal action is parallel, we now must carefully balance several factors "with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16. Although the decision to dismiss a federal suit because of parallel state-court litigation does not rest on a checklist, id., we have identified six factors to guide the analysis: (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the

- 8 -

relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. Chase Brexton, 411 F.3d at 463-64.

With respect to the first factor, whether the subject matter of the state litigation involves res or property, the parties agree that no res or property is involved over which the Tennessee state court has asserted jurisdiction. Accordingly, this factor weighs against abstention. Gannett Co., Inc. v. Clark Const. Group, Inc., 286 F.3d 737, 747 (4th Cir. 2002).

With respect to the second factor, whether the federal forum is an inconvenient one, the district court found that this factor weighed in favor of abstention. According to the district court, although AGC had some contacts with the state of Virginia (the contract in part was performed in Virginia, AGC was authorized to do business in Virginia, and AGC had an appointed agent to receive service of process in Virginia), such evidence was "clearly insufficient to outweigh the convenience of trying a case in the jurisdiction in which nearly all of the records and witnesses are located." (J.A. 107).

In Colorado River, the Supreme Court identified "the inconvenience of the federal forum" as a factor for the federal court to consider in deciding whether to dismiss a federal court

action because of a concurrent state proceeding. 424 U.S. at 818. The Court cited only Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), as support for consideration of this factor. 424 U.S. at 818. Gulf Oil involved the doctrine of forum non conveniens. 330 U.S. at 502. The district court had dismissed a suit filed in the Southern District of New York. Id. at 503. The disputed event had occurred in Virginia, and the witnesses and evidence were located in Virginia, some 400 miles from the New York forum. Id. at 503, 511. The Court noted that compulsory process would not be available for some witnesses if the matter remained in the New York federal court. Id. at 511. In Colorado River, the Court referred to the inconvenience of trying the case in the federal district court in Denver, 300 miles from the disputed area and from the Colorado state court with jurisdiction over that area. 424 U.S. at 820.

The district court's consideration of this factor is somewhat troubling. On the one hand, the distance between Sullivan County, Tennessee and Norfolk, Virginia is over 400 miles. Moreover, it appears, based on the scant record before us, that many of the witnesses and much of the evidence is located in Tennessee. Such facts support the district court's analysis under the authority of Gulf Oil and Colorado River. On the other hand, it is a bit of an overstatement to say that this case is all about conduct and witnesses in Tennessee. The

dolomite was imported into Virginia, stored in Virginia, and some of the dolomite at issue presumably remains in a warehouse there. With such conflicting evidence before it, perhaps the most prudent course for the district court would have been to take evidence on the question, especially since the record does not disclose which of the forums was more convenient for MidAtlantic. In any event, we need not address whether the district court's evaluation of this factor amounted to an abuse of discretion, because we can resolve this appeal by assuming for the sake of argument that the inconvenience of the federal forum factor favors abstention.

With respect to the third factor, the desirability of avoiding piecemeal litigation, the district court found that the Tennessee state court action and the federal action "will no doubt pose serious res judicata problems depending on which court first reaches the merits of the case." (J.A. 108). As a result, the district court concluded this factor favored abstention.

However, res judicata problems are not the threat with which Colorado River was concerned; it is a prospect inherent in all concurrent litigation. And the Supreme Court in Colorado River instructed federal courts that they are normally to accept jurisdiction even in the face of concurrent state litigation. 424 U.S. at 817. The "mere potential for conflict in the

- 11 -

results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." Id. at 816. Accordingly, the district court erred when it determined that this factor weighed in favor of abstention. See Gannett, 286 F.3d at 746 ("The threat of different outcomes in these breach of contract actions, however, is not the type of inconsistency against which abstention is designed to protect, in that Gannett and Clark are both parties to the Federal and State Contract Actions; thus, res judicata effect will be given to whichever judgment is rendered first. . . . Insofar as abstention does not lessen the threat of inefficiency or inconsistent results beyond those inherent in the duplicative nature of these proceedings and there is nothing in the nature of breach of contract actions that renders the fact of duplicative proceedings exceptionally problematic, the district court abused its discretion by determining that the possibility of piecemeal litigation weighs in favor of abstention.").

The fourth factor-the order in which jurisdiction was obtained by the courts-does not counsel in favor of abstention because the litigation in Tennessee state court is not further along than the federal action. See Moses H. Cone, 460 U.S. at 21 (noting that fourth factor is not "measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions").

The fifth factor, whether state law or federal law provides the rule of decision on the merits, and the sixth factor, assessing the adequacy of the state proceeding to protect the parties' rights, do not weigh in favor of abstention. These factors "typically are designed to justify retention of jurisdiction where an important federal right is implicated and state proceedings may be inadequate to protect the federal right, . . . or where retention of jurisdiction would create needless friction with important state policies." Gannett, 286 F.3d at 746 (citation and internal quotation marks omitted). As in Gannett, the fact that state law is implicated in this breach of contract action does not militate in favor of abstention, "particularly since both parties may find an adequate remedy in either state or federal court." Id. at 747 (citation and internal quotation marks omitted).

In our view, consideration of the Colorado River factors leads to the inescapable conclusion that this case does not present exceptional circumstances justifying a federal court surrendering its jurisdiction. The only factor that arguably weighs in favor of abstention is the inconvenience of the federal forum factor. Yet, this factor, standing alone under the circumstances of this case, is insufficient to uphold the district court's decision. Cf. AXA Corporate Solutions v. Underwriters Reins. Corp., 347 F.3d 272, 279 (7th Cir. 2003)

("The court was aware that there are powerful reasons for giving precedence to the Texas proceeding: all the parties are there, in one capacity or another, and there is no special expertise an Illinois federal court can bring to bear that would outweigh the efficiencies inherent in the ability to consider the case as a whole. Yet that cannot be enough; otherwise, the Court would not have stressed the 'unflagging obligation' of the federal courts to hear cases properly before them."). MidAtlantic properly filed this case in federal court, and it is entitled to its federal forum.* Accordingly, we vacate the district court's

---

\* We note that, in its opinion, the district court also found that MidAtlantic's filing of the federal action was premised on an improper motive. Such finding was based on the facts that MidAtlantic filed the federal action "almost immediately after being served" in the Tennessee state court action and that MidAtlantic failed to "offer any explanation as to why" the federal action was filed. (J.A. 109-10). The district court's findings raise the question of whether a party's motivation in pursuing parallel state or federal litigation may be a relevant factor in the exceptional circumstances equation. In <u>dicta</u>, the Supreme Court has remarked that motivation may play a role in the <u>Colorado River</u> abstention determination. <u>Moses H. Cone</u>, 460 U.S. at 17–18 n.20. We need not decide what role an improper motive plays in the <u>Colorado River</u> abstention determination, because there is no evidence to support the district court's finding that MidAtlantic had an improper motive in bringing the federal action. There is nothing sinister in the timing of the filing of the federal action–a later complaint is always going to be filed in the parallel litigation context, and there is nothing extraordinary about a three-week difference. Nor can we discern an improper motive from the forum selected by MidAtlantic. After all, part of the contract was performed in Virginia, AGC was authorized to do business in Virginia, AGC had an appointed agent to receive service of process in Virginia, and some of the
(Continued)

judgment and remand for further proceedings consistent with this opinion.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED

---

dolomite at issue presumably remains in a warehouse there. Finally, the circumstances in which courts have found improper motive simply are not present here. Cf. Vulcan Chem. Techs., Inc. V. Barker, 297 F.3d 332, 343-44 (4th Cir. 2002) (after applying the six Colorado River factors, the court discussed the inherent unfairness of allowing a company that was ordered to pay $21 million in damages in a California state court case to vacate that decision in a subsequent federal action in Virginia); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 534 (1st Cir. 1991) (stating that the district court did not err in counting "the motivation factor against retaining jurisdiction" where the district court found that the plaintiff's decision to switch to federal court stemmed from the plaintiff's unsuccessful effort to obtain a preliminary injunction in the state court); Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 363 (2d Cir. 1985) (affirming the dismissal of a federal action filed by a state court plaintiff, noting that deference to the state court is appropriate where the same party is the plaintiff in both courts and sues in the federal court on the same cause of action after suffering some failures in the earlier state court action).