*947 KRAVITCH, Senior Circuit Judge,
dissenting:
This case involves legal claims of significant human importance. In her petition brought under the International Child Abduction Remedies Act (“ICARA”), 42 U.S.C. §§ 11.601-11610, Mrs. Lops alleges that Mr. Lops wrongfully abducted their daughters, and she requests that the two girls be returned to her custody.
This court, however, must determine whether the district court was the proper court to hear the merits of the case. ICARA vests concurrent jurisdiction in state and federal courts. See 42 U.S.C. § 11603(a). Initially, Mrs. Lops chose to file her ICARA petition in the Superior Court of Columbia County, Georgia (“the Georgia court”), rather than in a federal district court. The Georgia court ruled that venue and personal jurisdiction did not lie in Georgia and, pursuant to the parties’ stipulation, directed that the case be transferred to the Family Court of Aiken County, South Carolina (“the South Carolina court”), which assumed jurisdiction over* the case. Then, apparently dissatisfied by a temporary custody decision of the South Carolina court and while that action was still pending, Mrs. Lops filed an identical ICARA petition with the United States District Court for the Southern District of Georgia (“the district court”), which, after ruling that venue and personal jurisdiction did exist in Georgia, proceeded to determine the merits of Mrs. Lops’s ICARA petition. Because I conclude that the district court should not have exercised jurisdiction over the ease, I respectfully dissent.
In my view, the district court was required to accept the Georgia court’s determinations that venue and personal jurisdiction were lacking in Georgia. I believe that-the majority, in holding to the contrary, misinterprets Georgia collateral estoppel law and undelemines the Full Faith and Credit Act, 28 UiS:C. § 1738. See infra Part II.
Moreover, even if the district court was not precluded from hearing the case, the district court abused its discretion by failing to stay the ease in deference to the South Carolina court. Such deference was required in light of the reactive nature of Mrs. Lops’s federal suit and Mrs. Lops’s circumvention of federal removal policy. Accordingly, even if preclusion principles do not apply, this court, in the interests of “wise judicial administration,” Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (quotation omitted), should vacate the district court’s judgment and order that it stay Mrs. Lops’s federal action, see infra Part III.
I.
Because I believe that the majority has omitted a few relevant details, I include a brief summary of the facts pertinent to my dissent. In 1995, Mr. Lops took his two daughters from Germany, where they were living with Mrs. Lops, to five with him in South Carolina. On November 6, 1997, Georgia law enforcement officials, acting pursuant to court order, seized the children, who were temporarily at the home of Mr. Lops’s mother in Columbia County, Georgia, and placed the children in the custody of the Georgia Department of Family and Children Services.
On November 12, Mrs. Lops filed an ICARA petition in the Georgia state court seeking the return of her two children to Germany. On November 14, the Georgia court issued an order: (1) holding that venue and personal jurisdiction were lacking in Georgia and that the ease should have been brought in South Carolina, the jurisdiction where the children were residing;[1] and (2) *948 transferring the case to the South Carolina court pursuant to the parties’ stipulation.[2]
On November 26, the South Carolina court held an initial hearing, during which it informed the parties that it would hear the merits of the ICARA petition on January 16, 1998.[3] On December 2,1997, the South Carolina court informed the parties that during the pendency of the ICARA proceedings the children would be placed with Mr. Lops’s mother, Anne E. Harrington, subject to an adequate security bond.[4] In a subsequent written order, the South Carolina court confirmed the January 16 hearing date and the award of temporary custody to Mr. Lops’s mother.[5]
On December 3, 1997, Mrs. Lops filed in the South Carolina court a motion to reconsider its December 2 decision regarding temporary custody.[6] Also on December 3, Mrs. Lops filed an ICARA petition in the federal district court. She did not move to dismiss the South Carolina court action at this time.[7]
Mr. Lops then moved to dismiss Mrs. Lops’s federal suit on the grounds, inter alia, that: (1) the Georgia state court’s jurisdictional ruling had preclusive effect in federal court in Georgia;[8] and (2) Mrs. Lops’s suit represented an improper attempt by a state court plaintiff to obtain removal to federal court.[9] On December 22, the district court, in an oral order, denied Mr. Lops’s motion to dismiss. The district court explicitly rejected the Georgia court’s analysis of the ICARA statute,[10] and it also stated:
In determining its own jurisdiction a federal district court is not bound by res judicata. Nor are the parties bound by any collateral estoppel with respect to the factual findings made by any other court. Indeed, it is the duty of a federal district court to determine a sufficiency of jurisdictional facts to properly decide or ascertain its own jurisdiction.
* * * *
I have had some concerns ... relating to the parallel state proceedings that were *949 originated in Georgia and subsequently transferred to the Family Court of South Carolina. I do not know of any concept that would bar the prosecution of both of those eases at the same time.
* * * *
This ease, in my view, does not require dismissal of the federal action. Indeed, in my view, it is more appropriate'for the federal court to proceed to disposition. After all, the act and the treaty, which the Petitioner seeks to enforce, are creatures of the federal sovereign as opposed to any state’s sovereignty.
* * * *
Accordingly, it is my finding and conclusion ... that this federal district court is possessed of jurisdiction to decide the matter in its entirety----
District court’s Order of December 22, 1997, at 7-11.
On January 16, 1998, the South Carolina court held the scheduled hearing on the merits of Mrs. Lops’s ICARA petition. In a subsequent order pendente lite, the South Carolina court noted that Mrs. Lops had made an untimely attempt to file a motion to dismiss in the South Carolina court. See South Carolina court’s Order of January 27, 1998, at 2 (denying Mrs. Lops’s motion to dismiss because it was filed “within 48 hours” of the South Carolina court’s substantive ICARA hearing on January 16,1997, in plain violation of the court’s “requisite 5 day notice requirement”). On January 17, Mrs. Lops filed a motion in district court requesting that the district court stay the South Carolina court proceedings. On February 8, the South Carolina court held an additional hearing on the merits of Mrs. Lops’s ICARA petition. On February 13, the district court granted Mrs. Lops’s motion to stay the South Carolina court proceedings, and shortly thereafter the Supreme Court of South Carolina stayed the South Carolina court proceedings pending resolution of the federal action.
II.
If the Georgia court simply had dismissed Mrs. Lops’s ICARA petition for lack of venue and personal jurisdiction, then the federal district court in Georgia would have been precluded from assuming jurisdiction over Mrs. Lops’s subsequent ICARA petition. See infra Part II.A. The Georgia court, however, after ruling that venue and personal jurisdiction were lacking in Georgia, did not dismiss the case but rather purported to transfer it to South Carolina. In my view, the fact that the Georgia court’s order contained an interstate transfer directive does not alter the preclusive effect of the Georgia court’s venue and personal jurisdiction rulings. First, the Georgia court was not authorized to transfer the case to another state, and thus its order must be considered a simple dismissal, plainly a final judgment under Georgia law. . See infra Part II.B. Second, even assuming that the■ Georgia court had the authority to order an interstate transfer, I believe that the rationale of Georgia collateral estoppel doctrine, see infra Part II.C, and the plain language of Georgia statutory provisions and case-law, .see infra Part II.D and Part II.E, compel the conclusion that the Georgia court’s order was a final judgment entitled to preclusive effect.[11]
Although no case squarely addresses the issues in this case, I believe that all relevant legal authority demands the same conclusion: The Georgia court’s order was a final judgment entitled to preclusive effect under Georgia law. Because the majority fails to apply collateral estoppel to the Georgia court’s decision, I consider the majority’s holding a troubling precedent for federal courts’ compliance with the Full Faith and Credit Act, 28 U.S.C. § 1738.
A.
The preclusive effect of a Georgia court’s judgment is governed by Georgia preclusion law. As the Supreme Court has explained, the Full Faith and Credit Act, 28 U.S.C. § 1738, “mandate[s] that the ‘judicial proceedings’ of any State ‘shall have the same *950 full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.’” Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 373, 116 S.Ct. 873, 877, 134 L.Ed.2d 6 (1996) (quoting 28 U.S.C. § 1738). Accordingly, “[fjederal courts may not employ their own rules ... in determining the effect of the state judgment, but must accept the rules chosen by the State from which the judgment is taken.” 516 U.S. at 373, 116 S.Ct. at 877 (internal quotation omitted).
Georgia collateral estoppel doctrine follows black-letter principles. Relying on the Restatement (Second) of Judgments (1982) (“Restatement”), the Georgia Supreme Court recently explained,
[Collateral estoppel applies where an issue of fact or law is actually litigated and determined by a valid judgment, and the determination is essential to the judgment. That determination is then conclusive in a subsequent action between the same parties.
Kent v. Kent, 265 Ga. 211, 211, 452 S.E.2d 764, 766 (1995) (citing Restatement § 27).
Under Georgia law, collateral estoppel applies only where the antecedent judgment was a final judgment. See, e.g., Quinn v. State, 221 Ga.App. 399, 400, 471 S.E.2d 337, 339 (1996), aff'd, 268 Ga. 70, 485 S.E.2d 483 (1997); Greene v. Transp. Ins. Co., 169 Ga. App. 504, 506, 313 S.E.2d 761, 763 (1984). If a trial court’s judgment is not appealed, that order becomes final when the time to seek appellate review has expired. See Reid v. Reid, 201 Ga.App. 530, 533, 411 S.E.2d 754, 756 (1991).
The Georgia court’s November 14 order, which ruled that venue and personal jurisdiction were lacking in Georgia, was not appealed. The order became final for collateral estoppel purposes on December 15. See O.C.G.A. § 5-6-38(a) (stating that notice of appeal must be filed within 30 days after entry of judgment). Under Georgia law, therefore, the Georgia court’s judgment became final one full week before December 22, when the district court ruled on Mr. Lops’s motion to dismiss. The timing prerequisites for collateral estoppel thus were satisfied.
If the Georgia court simply had dismissed the case for lack of venue and personal jurisdiction, then its order plainly would have had preclusive effect on other Georgia courts. As described in the Restatement, if a court dismisses a case for improper venue, collateral estoppel bars the plaintiff from attempting to bring the same suit in the same jurisdiction. See Restatement § 20 cmt. b illus. 1. Similarly, if a court dismisses a case for lack of personal jurisdiction, the specific jurisdictional determination of that court is binding on subsequent courts. See N. Ga. Elec. Membership Corp. v. City of Calhoun, Ga., 989 F.2d 429, 433 (11th Cir.1993) (discussing federal collateral estoppel principles; concluding that “[although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court’s jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claim.”) (quoting Boone v. Kurtz, 617 F.2d 435, 436 (5th Cir.1980)). Accordingly, had the Georgia court simply dismissed the instant case for lack of venue and personal jurisdiction, collateral estoppel principles would have barred Mrs. Lops from refiling the same case in any Georgia state court. Cf. Tyndale v. Mfrs. Supply Co., 209 Ga. 564, 74 S.E.2d 857 (1953) (holding that the second court was bound by the first court’s determination that service was improper).
Because Georgia preclusion law governs the preclusive effect of a Georgia court’s judgment in federal courts, see 28 U.S.C. § 1738, collateral estoppel likewise would have barred Mrs. Lops from bringing the same case before a federal district court in Georgia if the Georgia court simply had dismissed the case on the grounds that venue and personal jurisdiction were lacking in Georgia. See, e.g, Harbuck v. Marsh Block & Co., 896 F.2d 1327, 1329 (11th Cir.1990) (“Where the question of personal jurisdiction has been fully and fairly litigated and finally decided in state court ... that decision must *951 be accorded full faith and credit in the federal court.”).[12]
B.
The wrinkle here is that the Georgia court did not simply dismiss the case. Based on its venue and personal jurisdiction rulings,, the Georgia court directed that the ease be transferred to South Carolina: “All parties stipulated to a transfer of the proceedings verses [sic] dismissal and refiling in the event this Court found no authority for exercising jurisdiction in Georgia.” Georgia court’s Order of November 14,1997, at 7 n.2.1 believe, however, that the Georgia court lacked the authority to transfer Mrs. Lops’s ICAEA petition to the South Carolina court. Thus, I conclude that the Georgia court’s order constituted a simple dismissal, plainly a final judgment with preclusive effect.[13]
The Georgia court was not authorized to transfer Mrs. Lops’s ICAEA petition to the court of another state. The federal ICAEA statute itself does not sanction interstate transfers. Likewise, Georgia does not have a general statutory provision allowing state courts to transfer cases to other states, cf. 20 Am.Jur.2d Courts § 130 (1995) (describing Uniform Transfer of Litigation Act, which Georgia has not adopted), or a specific statutory provision concerning the interstate transfer of ICAEA cases.[14] Similarly, the doctrine of forum non conveniens did not permit the Georgia court’s interstate transfer.[15] Accordingly, the interstate transfer *952 directive issued by the Georgia court was unauthorized. Cf. Rogers v. Rogers, 688 So.2d 421, 422 (Fla. 3d DCA 1997) (reversing an interstate transfer order that was not authorized under state law); United Carolina Bank v. Martocci, 416 Pa.Super. 16, 22-23, 610 A2d 484, 487-88 (1992) (holding that Pennsylvania’s intrastate transfer law does not authorize interstate transfers); Bliss v. Bliss, 343 Pa.Super. 17, 21, 493 A.2d 780, 782 (1985) (same).
Because the Georgia court entered an interstate transfer directive despite lacking the authority to do so, that directive is considered a nullity, see Thomas v. Thomas, 221 Ga. 652, 652, 146 S.E.2d 724, 725 (1966); Skinner v. Skinner, 172 Ga.App. 609, 610, 323 S.E.2d 905, 906 (1984), and “may be attacked any where and any time in any court,” see Palmer v. Bunn, 218 Ga. 244, 245, 127 S.E.2d 372, 373 (1962). The Georgia court explicitly stated that the transfer directive was an alternative to simply dismissing the case. See Georgia court’s Order of November 14, 1997, at 7 n.2. Thus, this court must characterize the Georgia court’s order, absent the invalid transfer directive, to be a dismissal. See In re Marriage of Clark, 232 Ill.App.3d 342, 347, 173 Ill.Dec. 532, 597 N.E.2d 240, 243 (1992) (reasoning that because Illinois law only authorized intrastate transfers, the trial court’s order transferring the case to another state constituted a simple dismissal); see also In re Marriage of Kelso, 173 Ill.App.3d 746, 751, 123 Ill.Dec. 352, 527 N.E.2d 990, 992 (1988) (describing a motion for interstate transfer as “more properly, a motion to dismiss”). As a dismissal, the Georgia court’s order was a final judgment with preclusive effect.
Apparently conceding that no federal or Georgia law authorizes the interstate transfer of an ICARA ease, the majority contends that the parties, through their stipulation, gave the Georgia court the power to transfer the case. Georgia black-letter law, however, long has been clear: Parties by agreement cannot provide a court with authority that it otherwise would have lacked. See Dix v. Dix, 132 Ga. 630, 632, 64 S.E. 790, 791 (1909) (“It is rudimentary law that parties can not, by consent express or implied, give jurisdiction to a court; that as to the subject-matter the court is limited by the powers conferred upon it by law, and can not be given additional power or jurisdiction by consent of the parties or by waiver.”), cited in Mitchell v. Mitchell, 220 Ga.App. 682, 683, 469 S.E.2d 540, 542 (1996).
Finally, the majority argues that Mr. Lops, having stipulated to the transfer, may not challenge its legality. A null order of a Georgia court, however, “may be attacked any where and any time in any court.” See Palmer v. Bunn, 218 Ga. 244, 245, 127 S.E.2d 372, 373 (1962). Moreover, it is Mrs. Lops, not Mr. Lops, who has altered her legal position. Mr. Lops consistently has contended that this case should have been brought in South Carolina, not Georgia. By contrast, Mrs. Lops, having stipulated to the transfer of the case to South Carolina based on the Georgia court’s finding that venue and jurisdiction were lacking in Georgia, filed suit in the federal district court in Georgia, where she argued that venue and jurisdiction did exist in Georgia. Georgia preclusion law prohibited Mrs. Lops from changing her position in this manner. See Thompson v. Thompson, 237 Ga. 509, 509, 228 S.E.2d 886, 887 (1976) (“[Pjarties to stipulations and agreements entered into in the course of judicial proceedings will not be permitted to take positions inconsistent therewith in the absence of fraud, duress or mistake.”); Ghrist v. Fricks, 219 GaApp. 415, 417, 465 S.E.2d 501, 504 (1995) (applying collateral estoppel to the mother’s statement of paternity contained in a settlement agreement because “[pjarties to stipulations and agreements entered into in the course of judicial proceedings are estopped from taking positions inconsistent therewith”) (quotation omitted).[16]
*953 C.
Even assuming, arguendo, that the Georgia court’s interstate transfer directive was effective, the Georgia court’s order was a final judgment entitled to preclusive effect. In my view, Georgia’s collateral estoppel doctrine does not permit a contrary conclusion.
The purpose of Georgia’s collateral estoppel doctrine is judicial economy. As the Georgia Supreme Court has explained, collateral estoppel “applies where an issue of fact or law is actually litigated and determined by a valid judgment, and the determination is essential to the judgment.” Kent v. Kent, 265 Ga. 211, 211, 452 S.E.2d 764, 766 (1995) (citing Restatement § 27). By according preclusive effect to final judgments, see Quinn v. State, 221 Ga.App. 399, 400, 471 S.E.2d 337, 339 (1996), aff'd, 268 Ga. 70, 485 S.E.2d 483 (1997), Georgia’s collateral estoppel law serves to protect “litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.” Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979), quoted in Matter of Gill, 181 B.R. 666, 670 (Bankr.N.D.Ga. Apr.14, 1995) (describing the rationale for Georgia’s collateral estoppel doctrine); see Bowman v. Bowman, 215 Ga. 560, 561-62, 111 S.E.2d 226, 227-28 (1959) (concluding that the need for finality justifies the imposition of res judicata; stating that the ancient maxim “It is of advantage to the public that there be an end of litigation” represents a policy “so essential as not to admit of question or dispute”); Lankford v. Holton, 196 Ga. 631, 633, 27 S.E.2d 310, 312 (1943) (“One of the prime objects of judicial procedure is to forever settle and end disputes between litigants, and courts never look with favor on the unnecessary prolongation of litigation, and particularly disapprove attempts to ignore or evade binding judgments.”).
This court must accord preclusive effect to the Georgia court’s venue and personal jurisdiction rulings in order to fulfill the purpose of Georgia collateral estoppel doctrine. The Georgia court “actually litigated and determined” the issues of venue and personal jurisdiction, which were “essential to [its] judgment.” Kent, 265 Ga. at 211, 452 S.E.2d at 766 (citing Restatement § 27). Moreover, an examination of the implications of the majority’s ruling reveals that the Georgia court’s order was, necessarily, a final judgment with preclusive effect.
Under the majority’s holding, if a state or federal court in Georgia transfers a case to another state for lack of venue and personal jurisdiction, then the plaintiff may bring the same action again in any state or federal court in Georgia and relitigate the issues of venue and personal jurisdiction. Indeed, if that court transfers the case again for the same reason, the plaintiff may refile once more in state or federal court in Georgia and relitigate the same issues. According to the majority’s logic, only when a transferred case reaches final judgment in another state would the plaintiff become unable to relitigate the issues of venue and personal jurisdiction before state or federal courts in Georgia.
The majority’s holding is thus contrary to judicial economy, the core purpose of Georgia’s collateral estoppel doctrine. See Matter of Gill, 181 B.R. 666, 670 (Bankr.N.D.Ga. Apr.14,1995) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979)); Bowman v. Bowman, 215 Ga. 560, 561-62, 111 S.E.2d 226, 227-28 (1959); Lankford v. Holton, 196 Ga. 631, 633, 27 S.E.2d 310, 312 (1943). Indeed, it also is contrary to principles of preclusion long-established in Anglo-American jurisprudence. See Restatement Ch. 1 at 11 (“The convention concerning finality of judgments has to be accepted, certainly if there is to be practical meaning to the idea that legal disputes can be resolved by legal process.”). Unlike the majority, I do not believe that another Superior Court of the State of Georgia would allow Mrs. Lops to refile her ICARA suit and relitigate the Georgia court’s venue and personal jurisdiction rulings. Instead, that Superior Court would recognize the Georgia court’s original order to be a final judgment with preclusive effect. Accordingly, I conclude that the district court was required to *954 dismiss the case pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738.
D.
My conclusion also is compelled by a close examination of Georgia law concerning the finality requirement of collateral estoppel doctrine. As the majority notes, no Georgia court has ruled whether an order containing an interstate transfer directive is a final judgment to be accorded preclusive effect. This apparent gap in the law is quite understandable, however. As described in Part II.B, supra, Georgia courts generally are not authorized to transfer cases to another state. Logically, therefore, Georgia courts have had little opportunity to determine the preclusive effect of interstate transfer orders. Nonetheless, I believe that the Georgia Supreme Court, if faced with the question, would rule that the Georgia court’s order in this case was a final judgment for collateral estoppel purposes.
Under Georgia law, judgments that are final for collateral estoppel purposes include, but are not limited to, those judgments that are final for appealability purposes.[17] Georgia’s appealability statute provides in part:
(a) Appeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts, the constitutional city courts, and such other courts or tribunals from which appeals are authorized by the Constitution and laws of this state:
(1) All final judgments, that is to say, where the case is no longer pending in the court below, except as provided in Code Section 5-6-35.
See O.C.G.A. § 5-6-34 (emphasis added). Accordingly, I turn to the question of whether a Georgia court’s order transferring a case to another state causes the case to be “no longer pending in the court below.” O.C.G.A. § 5-6-34(a)(l).
Without citing any authority for its conclusion, the majority states that “the court below” refers to any trial court, including the trial court of another state. In my view, however, the plain language, legislative history, and judicial interpretations of O.C.G.A. § 5—6—34(a) (1) all demand the conclusion that “the court below” refers to a lower court in the State of Georgia. Therefore, a Georgia court’s order that effectively transfers a case to another state renders the case “no longer pending in the court below.” Such an order is a final judgment for appealability purposes and, consequently, for collateral estoppel purposes.
A plain reading of the statute indicates that the phrase “the court below” in O.C.G.A. § 5-6-34(a)(l) refers to a lower court of the State of Georgia. Section 5-6-34(a)(l) and the immediately preceding § 5-6-34(a), considered together, have three elements. First, they describe the courts to which an “[a]ppeal[ ] may be taken,” namely the Geor *955 gia Supreme Court and the Georgia Court of Appeals. See O.C.G.A. § 5-6-34(a). Second, they describe the courts from which an appeal may be taken, namely “the superior courts, the constitutional city courts, and such other courts or tribunals from which appeals are authorized by the Constitution and laws of this state.” O.C.G.A. § 5-6-34(a). Third, they establish when an appeal may be taken, namely when “the case is no longer pending in the court below.” O.C.G.A. § 5-6-34(a)(l).
The logical meaning of “the court below” in § 5-6-34(a)(l) is the court from which an appeal is taken to the Georgia Supreme Court or the Georgia Court of Appeals. According to § 5-6-34(a), the court from which such an appeal is taken is necessarily a lower court of the State of Georgia: a superior court, a constitutional city court, or one of the “other courts or tribunals from which appeals are authorized by the Constitution and laws of this state.” Thus, a case is only “pending in the court below” for purposes of O.C.G.A § 5-6-3i(a)(l) if it is pending in a lower court of the State of Georgia.
The Georgia court’s order purported to transfer the case in its entirety to the South Carolina court. Assuming, as does the majority, that this transfer directive was effective, the Georgia court’s order rendered the case “no longer pending” in the lower courts of the State of Georgia. Thus, according to the plain language of O.C.G.A. § 5-6-34(a)(1), the Georgia court’s order was a final judgment.
The legislative history of O.C.G.A. § 5-6-34(a)(1) reinforces this conclusion. The statutory precursor of O.C.G.A. § 5-6-34(a)(l) was Ga.Code Ann. § 6-701, which provided in part:
No cause shall be carried to the Supreme Court or Court of Appeals upon any bill of exceptions while the same is pending in the court below, unless the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the cause or final as to some material party thereto.
The structure of Ga.Code Ann. § 6-701 reveals that “the court below” refers to the court from which an appeal is taken to the Supreme Court or Court of Appeals. Because it is beyond dispute that an appeal cannot be taken to these courts from courts outside of the State of Georgia, “the court below” necessarily refers to a lower court within the State of Georgia.
When O.C.G.A. § 5-6-34(a)(l) replaced Ga. Code Ann. § 6-701, see 1965 Ga. Laws at 18, § 1, the meaning of “the court below” did not change. As the Georgia Court of Appeals has ruled, O.C.G.A. § 5-6-34(a)(l) only restates the original language of Ga.Code Ann. § 6-701 “in somewhat different terminology____ [N]o change in result was intended.” Munday v. Brissette, 113 Ga.App. 147, 151, 148 S.E.2d 55, 60, rev’d on other grounds, 222 Ga. 162, 149 S.E.2d 110 (1966) (citing E. Freeman Leverett, The Appellate Procedure Act of 1965, 1 Ga. State Bar Journal 451, 456 (1965)). Accordingly, the legislative history of O.C.G.A. § 5-6-34(a)(l) also supports the conclusion that “the court below” refers to a lower court in the State of Georgia.
Finally, Georgia case-law confirms this interpretation of “the court below.” Georgia appellate courts have held that an intrastate transfer from one Georgia Superior Court to another is not a final judgment and therefore not appealable. See Wright v. Millines, 212 Ga.App. 453, 454, 442 S.E.2d 304, 304 (1994); Griffith v. Ga. Bd. of Dentistry, 175 Ga.App. 533, 533, 333 S.E.2d 647, 647 (1985); see also Ga. Const, of 1983, art. VI, § 1, ¶ 8; Georgia Uniform Transfer Rules. The rationale for this rule is that ./rom the perspective of the Georgia appellate courts, a case that is transferred from one Georgia Superior Court to another remains “pending in the court below.” In Griffith, for example, the court explained that an order transferring a case from one Georgia Superior Court to another was not a final judgment because the case remained pending in a “court below” the Georgia Court of Appeals. See 175 Ga.App. at 533, 333 S.E.2d at 647 (“The subject transfer order is not a final judgment as the ease is still pending in the court below, albeit a different court from the one ordering the transfer.”). By contrast, a case that is transferred to another state’s court is no longer appealable to a Georgia appellate court. *956 Thus, from the perspective of the Georgia appellate- courts, an interstate transfer order renders a case “no longer pending in the court below” and is a final judgment appeal-able under O.C.G.A. § 5-6-34(a)(l).
The sparse Georgia case-law concerning interstate transfer orders further bolsters my conclusion that such orders are final judgments for appealability purposes. Even though Georgia courts generally are not authorized to transfer cases to another state, see supra Part II.B, relevant cases have arisen under two Georgia statutes that do provide for interstate transfers. First, Georgia’s Uniform Child Custody Jurisdiction Act (“UCCJA”) provides that a court with jurisdiction under the UCCJA may transfer the ease to another state if it finds that Georgia is an inconvenient forum and that a court of another state would be more appropriate.[18] In Arnold, v. Jordan, 190 Ga.App. 8, 378 S.E.2d 139 (1989), the Georgia Court of Appeals reviewed a Georgia Superior Court’s order that a child custody case be transferred to Texas pursuant to the UCCJA. See id. at 10, 378 S.E.2d at 141. In describing its assumption of jurisdiction over the case, the Georgia Court of Appeals stated simply that it had “granted the father’s application for discretionary review.” Id. (emphasis added).[19] This language indicates that the father did not have to comply with Georgia’s interlocutory review procedures.[20] Cf. Avera v. Avera, 268 Ga. 4, 4, 485 S.E.2d 731, 732 (1997) (reviewing on appeal the trial court’s order in a divorce action and stating, “This court granted Wife’s application for interlocutory discretionary review of the trial court’s order.”) (emphasis added).[21] Therefore, Arnold demonstrates that an interstate transfer by a Georgia trial court is a final, not interlocutory, order for appealability purposes.
A second statute, Georgia’s Uniform Juvenile Court Act (“UJCA”), authorizes a court to transfer a child to the state of the child’s residence if the child is adjudicated to be delinquent. See O.C.G.A. § 15-11-44. The Georgia Supreme Court has ruled that such interstate transfers are appealable final judgments. See In the Interest of T.L.C., 266 Ga. 407, 407, 467 S.E.2d 885, 886 (1996); G.W. v. State, 233 Ga. 274, 275-76, 210 S.E.2d 805, 807 (1974). In my view, T.L.C. and G.W. provide further support for the conclusion that the Georgia court’s interstate transfer order in this case was a final judgment under O.C.G.A. § 5-6-34(a)(l).
The test for determining whether juvenile court orders are final judgments and thus appealable is the same standard found in O.C.G.A. § 5-6-34(a)(l). See O.C.G.A. § 15-11-64 (“In all cases of final judgments of a juvenile court judge, appeals shall be taken to the Courts of Appeals or the Supreme Court in the same manner as appeals from the superior court.”); J.T.M. v. State, 142 Ga.App. 635, 636, 236 S.E.2d 764, 765 (1977) (applying the standard of whether the case is “no longer pending in the court below,” see O.C.G.A. § 5-6-34(a)(l), in determining whether a juvenile court judgment is an appealable final judgment). Even though a juvenile court order adjudicating delinquency and transferring the case to another court within Georgia for disposition is not a final judgment, see D.C.E. v. State, 130 Ga.App. *957 724, 724-25, 204 S.E.2d 481, 481-82 (1974); In the Interest of G.C.S., 186 Ga.App. 291, 291, 367 S.E.2d 103, 104 (1988), a juvenile court order adjudicating delinquency and transferring the case to another state for disposition is a final judgment, see In the Interest of T.L.C., 266 Ga. 407, 407, 467 S.E.2d 885, 886 (1996); G.W. v. State, 233 Ga. 274, 275-76, 210 S.E.2d 805, 807 (1974). Noting the constitutional imperative of according appellate review to juveniles whose cases are transferred out of state, the G.W. court explained that an interstate transfer order is an appealable final judgment because it is the last order to be issued by any Georgia court regarding the case:
The judgment appealed from in this case was the final judgment to be entered in the case by any court in Georgia and therefore, unlike the eases relied upon where the case was transferred to another Georgia court for final disposition, it was subject to review without a certificate authorizing immediate review.
233 Ga. at 275-76, 210 S.E.2d at 807 (emphasis added); see also T.L.C., 266 Ga. at 407, 467 S.E.2d at 886 (citing G.W., 233 Ga. at 275-76, 210 S.E.2d at 807).
The majority attempts to limit the holdings of G.W. and T.L.C. on the grounds that the G.W. court mentioned equal protection concerns prior to reaching its conclusion. Subsequent opinions that have described the G.W. court’s holding regarding final judgments, however, do not even mention equal protection. In T.L.C., for example, the court' simply cited the G.W. court’s conclusion that an interstate transfer order was appealable because it was “the final judgment to be entered in the case by any court in Georgia.” See T.L.C., 266 Ga. at 407, 467 S.E.2d at 886 (citing G.W., 233 Ga. at 275-76, 210 S.E.2d at 807). Similarly, the Georgia Court of Appeals recently described T.L.C. and G.W. as follows:
In our view, the order appealed from in the case sub judice is not a final order, for it does not render a judgment of adjudication and disposition on the allegations contained in the petition for delinquency. Rather, it holds all charges in abeyance during a period of good behavior. Upon successful completion of that period of good behavior, all charges will be dismissed. Compare In the Interest of T.L.C., 266 Ga. 407, 467 S.E.2d 885 (adjudication of delinquency and transfer to the juvenile court of Russell County, Alabama, was directly appealable because it “was the final judgment to be entered in the case by any court in Georgia____”); G.W. v. State of Ga., 233 Ga. 274, 276, 210 S.E.2d 805 (adjudication of delinquency and transfer to county of residence of nonresidents of Georgia was the “final judgment to be entered in the case by any court in Georgia and therefore, unlike the cases ... where the case was transferred to another Georgia court for final disposition, ... was subject to review without a certificate authorizing immediate review.”). Since the order appealed from is not the final judgment to be entered in the case by any court in Georgia, this appeal is premature, and the case must be dismissed without prejudice.
In Interest of M.T., 223 Ga.App. 615, 616, 478 S.E.2d 428, 429 (1996); see also Sanchez v. Walker County Dept, of Family and Children Servs., 235 Ga. 817, 818, 221 S.E.2d 589, 589 (1976).
Accordingly, although the G.W. court did refer to equal protection concerns, G.W. and its progeny stand for the proposition that an interstate transfer order, being the last order entered by any court in Georgia, is a final judgment for appealability purposes. Because the test for determining whether juvenile court orders are appealable final judgments is the same standard employed under O.C.G.A. § 5—6—34(a)(1), see O.C.G.A. § 15-11-64; J.T.M. v. State, 142 Ga.App. 635, 636, 236 S.E.2d 764, 765 (1977), these cases from the juvenile court context reinforce my conclusion that an order containing an interstate transfer directive is an appealable final judgment under O.C.G.A. § 5-6-34(a)(l).
As the majority points out, an intrastate transfer order that changes the fundamental nature of a proceeding also is deemed a final judgment for appealability purposes.[22] This *958 observation, however, casts no doubt whatsoever on my conclusion that an effective interstate transfer order is a final judgment under O.C.G.A. § 5-6-34(a)(l) because it renders the case “no longer pending in the court below.”
Accordingly, all relevant evidence from Georgia law points unambiguously to the same conclusion: A case is “pending in the court below,” see O.C.G.A. § 5-6-34(a)(l), only if it remains in one of the lower Georgia courts. Conversely, if a Georgia court issues a legitimate interstate transfer order, that order renders the case “no longer pending in the court below,” and thus the order is appealable, see O.C.G.A. § 5—6—34(a)(1), and entitled to preclusive effect, see Gresham Park Community Org. v. Howell, 652 F.2d 1227, 1242 & n. 43 (5th Cir. Unit B Aug.10, 1981). Therefore, even assuming, arguendo, that the Georgia court’s interstate transfer directive was effective, the district court should have accorded preclusive effect to the Georgia court’s venue and personal jurisdiction determinations.
E.
The fact that the parties conditionally stipulated to the interstate transfer does nothing to alter my conclusion that the Georgia court’s order was a final judgment with preclusive effect. Collateral estoppel “applies where an issue of fact or law is actually litigated and determined by a valid judgment, and the determination is essential to the judgment.” Kent v. Kent, 265 Ga. 211, 211, 452 S.E.2d 764, 766 (1995) (citing Restatement § 27). Here, the parties stipulated to the interstate transfer in the event that the court determined that it lacked jurisdiction over the case. Because the Georgia court’s venue and personal jurisdiction rulings were “essential to the judgment,” collateral estoppel necessarily applies to those rulings.
Indeed, the parties’ conditional stipulation only strengthens my conclusion that the Georgia court’s order must be accorded preclusive effect. The transfer to which Mrs. Lops stipulated was based on the Georgia court’s rulings that venue and personal jurisdiction were lacking in Georgia. Georgia preclusion principles prohibited Mrs. Lops from refiling the same action in a state or federal court in Georgia and claiming that venue and personal jurisdiction existed in Georgia. See Thompson v. Thompson, 237 Ga. 509, 509, 228 S.E.2d 886, 887 (1976) (“[PJarties to stipulations and agreements entered into in the course of judicial proceedings will not be permitted to take positions inconsistent therewith in the absence of fraud, duress or mistake.”); Ghrist v. Fricks, 219 Ga.App. 415, 417, 465 S.E.2d 501, 504 (1995) (applying collateral estoppel to mother’s statement of paternity contained in settlement agreement because “[pJarties to stipulations and agreements entered into in the cootse of judicial proceedings are estopped from taking positions inconsistent therewith”) (quotation omitted); see also Great Atl. Ins. Co. v. Morgan, 161 Ga.App. 680, 683, 288 S.E.2d 287, 289 (1982) (stating that *959 collateral estoppel applies to consent judgments).
Finally, even assuming that Mrs. Lops, by stipulating to the transfer, lost the right to appeal the Georgia court’s venue and personal jurisdiction rulings, those rulings are nonetheless binding on subsequent courts. As the Georgia Supreme Court stated in Kent,
We need not determine whether the contempt court’s order was, on its face, appealable. It was the husband’s duty to obtain an appealable order on that issue, and to the extent he did not, he cannot now argue that collateral estoppel should not apply.
265 Ga. at 212 n. 3, 452 S.E.2d at 766 n. 3 (emphasis added). Thus, even assuming that Mrs. Lops failed to obtain an appealable order from the Georgia court, she may not claim that the Georgia court’s venue and personal jurisdiction rulings are not entitled to preclusive effect in federal court.[23]
F.
The majority, citing Fierer v. Ashe, 147 Ga.App. 446, 249 S.E.2d 270 (1978), would hold in the alternative that this court should apply the “manifest injustice” exception to the collateral estoppel doctrine. I disagree. In Fierer, the court noted that certain courts have “occasionally rejected or qualified [preclusion principles] in cases in which an inflexible application would have violated an overriding public policy or resulted in manifest injustice to a party.” See id. at 449-50, 249 S.E.2d at 273 (citing IB Moore’s Federal Practice 783, ¶ 0.405(11)). The Fierer court, however, characterized the manifest injustice exception as “narrow” and “obscure,” see 147 Ga.App. at 450, 249 S.E.2d at 273, and, without deciding whether the exception applied in the securities context, ruled that the appellees failed to meet their burden of proof, see id.
In my view, applying such a “narrow” and “obscure” exception to the facts of this case would be a grave mistake. Rather than appeal the Georgia court’s venue and jurisdictional rulings, Mrs. Lops herself stipulated that, the case be transferred to the South Carolina court. Subsequently, dissatisfied by the South Carolina court’s oral statement on December 2 that it would place the children with Mr. Lops’s mother during the pendency of the proceedings, Mrs. Lops brought suit in federal district court in Georgia. Mrs. Lops’s actions constitute a flagrant attempt to use the federal court system to circumvent the Georgia court’s venue and personal jurisdiction rulings. Accordingly, applying the manifest injustice exception in Mrs. Lops’s favor would be most inappropriate.
Moreover, the apparent soundness of the district court’s ruling on the merits of the ICARA petition does not suggest that reversing the district court’s decision would be manifestly unjust. The South Carolina court has not yet ruled on the merits of Mrs. Lops’s ICARA petition, and Mrs. Lops has not suggested that the South Carolina court lacks competence to determine an ICARA petition. If the facts in this case are as the district court found them, then the South Carolina court would have reached the same conclusion. For this court to presume otherwise would constitute an affront to the efficacy of the South Carolina court system.
The majority also states that the Georgia court’s order should not be accorded preclusive effect because the order was based on an erroneous interpretation of the ICARA statute. Although I agree that the Georgia court misinterpreted the ICARA statute, I dispute the majority’s interpretation of Georgia preclusion law. Georgia courts consistently and unambiguously have held that even erroneous judgments must be accorded preclusive effect. See Chilivis v. Dasher, 236 Ga. 669, 670, 225 S.E.2d 32, 33-34 (1976) (stating that collateral estoppel applies “regardless of the *960 correctness of [the] rulings”); Kilgo v. Keaton, 227 Ga. 563, 564, 181 S.E.2d 821, 822 (1971) (giving preclusive effect to a prior judgment “however irregular or erroneous”); Johnston v. Duncan, 227 Ga. 298, 298, 180 S.E.2d 348, 349 (1971) (holding that res judicata applies “[r]egardless of the correctness of [the former] decision”); Lankford v. Holton, 196 Ga. 631, 633-34, 27 S.E.2d 310, 312 (1943) (stating that the importance of finality requires giving preclusive effect even to erroneous decisions). In my view, the majority has misrepresented Georgia law by holding to the contrary.
All relevant legal authority thus confirms that the district court should not have assumed jurisdiction over this case. The Georgia court explicitly held that venue was improper in Georgia and that personal jurisdiction did not lie in Georgia. Even assuming that the Georgia court had the authority to transfer the ease to South Carolina, the case, once transferred, was “no longer pending in the court below,” O.C.G.A. § 5-6-34(a)(1), because Georgia appellate courts no longer had jurisdiction over it. Under Georgia law, therefore, the Georgia court’s order was a final judgment that barred Mrs. Lops from relitigating the issues of venue and personal jurisdiction in any Georgia state court. Accordingly, Mrs. Lops was barred from suing again in federal district court in Georgia. See Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 373, 116 S.Ct. 873, 877, 134 L.Ed.2d 6 (1996) (interpreting the Full Faith and Credit Act, 28 U.S.C. § 1738, as mandatory).
III.
Even if the district court was not precluded from assuming jurisdiction over this case, the district court was faced with the question of whether to stay the case in deference to the South Carolina court pursuant to the doctrine enunciated in Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236,47 L.Ed.2d 483 (1976), and related cases. Because Mrs. Lops’s federal suit was reactive to the state court proceedings, see infra Part III.C, and contrary to federal removal policy, see infra Part III.D, I conclude that the district court abused its discretion in failing to stay the instant action in deference to the South Carolina court. Furthermore, given that the South Carolina court already has held hearings on the merits of Mrs. Lops’s ICARA petition, see infra Part III.E, we should vacate the district court’s judgment and direct it to stay Mrs. Lops’s federal action, see infra Part III.F.[24]
A.
Considerations of “wise judicial administration” may warrant that a federal district court defer[25] to parallel state proceedings. *961 See Colo. River, 424 U.S. at 818, 96 S.Ct. at 1246 (quotation omitted). In light of the “virtually unflagging” obligation of the federal courts to exercise their jurisdiction, see id. at 817, 96 S.Ct. at 1246, such deference to state courts should occur only under “exceptional” circumstances and when warranted by “the clearest of justifications,” id. at 818-19, 96 S.Ct. at 1246-47. The Colorado River Court listed four illustrative factors to be considered in determining whether exceptional circumstances exist: (1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; and (4) the order in which the fora obtained jurisdiction. See id. at 818, 96 S.Ct. at 1246-47. In Moses H. Cone Mem’l Hosp. v. Mercury Constr., 460 U.S. 1, 19, 23-26, 103 S.Ct. 927, 938, 941-42, 74 L.Ed.2d 765 (1983), the Court reaffirmed the “exceptional-circumstances” test of Colorado River and mentioned additional factors, including: (5) whether state or federal law will be applied; and (6) the adequacy of the state court to protect the parties’ rights. The Moses H. Cone Court also stated that it found “considerable merit” in the idea “that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under Colorado River." 460 U.S. at 18 n. 20, 103 S.Ct. at 938 n. 20. Other courts have held that federal removal policy bars a plaintiff whose initial suit is pending in state court from filing the same suit against the same defendant in federal court. See, e.g., Am. Int’l Underwriters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1260-61 (9th Cir.1988).
A district court evaluating the Colorado River “exceptional-circumstances test,” see Moses H. Cone, 460 U.S. at 19, 103 S.Ct. at 938, must be mindful that the specific factors enumerated in Colorado River and Moses H. Cone are not exclusive, see Fox v. Maulding, 16 F.3d 1079, 1082 (10th Cir.1994); Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1367 (9th Cir.1990); Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir.1988), and that
the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to ease, depending on the particular setting of the case.
Moses H. Cone, 460 U.S. at 16, 103 S.Ct. at 937. Accordingly, the district court must weigh all relevant considerations “in a pragmatic, flexible manner with a view to the realities of the case at hand.” Moses H. Cone, 460 U.S. at 21, 103 S.Ct. at 940.
A district court’s refusal to defer to a state court is not immediately appealable under 28 U.S.C. § 1291 or 28 U.S.C. § 1292(a)(1). See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).[26] A district court’s refusal to defer to a state court is ultimately reviewable on appeal from final judgment, *962 however. See, e.g., Legal Econ. Evaluations, Inc. v. Metropolitan Life Ins. Co., 39 F.3d 951, 956 (9th Cir.1994); TransDulles Cent, Inc. v. USX Corp., 976 F.2d 219, 224 (4th Cir.1992); Schneider Nat’l Carriers, Inc. v. Carr, 903 F.2d 1154, 1156-58 (7th Cir.1990); Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc., 903 F.2d 352, 360 & n. 7 (5th Cir.1990).
We review for abuse of discretion a district court’s decision not to defer to a state court under the Colorado River doctrine. See Gov’t Employees Ins. Co. v. Simon, 917 F.2d 1144, 1148 (8th Cir.1990). Under this standard, a district court will be reversed if it has “made a clear error of judgment, or has applied an incorrect legal standard.” Sun-America Corp. v. Sun Life Assur. Co. of Can., 77 F.3d 1325, 1333 (11th Cir.) (citations omitted), cert. denied, — U.S. -, 117 S.Ct. 79, 136 L.Ed.2d 37 (1996). Although abuse of discretion is a relatively relaxed standard, see Dopp v. Pritzker, 38 F.3d 1239, 1253 (1st Cir.1994), it is “not a toothless one,” see McNeil v. Loumey, 831 F.2d 1368, 1373 (7th Cir.1987). Review for abuse of discretion implies neither that the district court’s judgment is unreviewable, see Moses H. Cone, 460 U.S. at 19, 103 S.Ct. at 938, nor that this court “may merely rubber-stamp a district judge’s discretionary determinations,” Dopp, 38 F.3d at 1253. Accordingly, in certain circumstances, a district court’s decision not to defer to the state court pursuant to the Colorado River doctrine will constitute an abuse of discretion. See Microsoftware Computer Sys. v. Ontel Corp., 686 F.2d 531 (7th Cir.1982) (holding that the district court abused its discretion in refusing to stay a federal diversity action pending the outcome of an identical state court suit, where the state court suit was filed first and there was no indication that the state courts could not fully and fairly resolve the parties’ dispute), overruled on other grounds, Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).[27]
B.
Although the first,[28] second,[29] third,[30] and sixth[31] factors enumerated supra do not apply and the fifth factor ordinarily would weigh in favor of assuming jurisdiction,[32] all *963 other relevant considerations compel the conclusion that the district court abused its discretion by failing to defer to the South Carolina court. First, Mrs. Lops’s federal suit was “reactive,” see Moses H. Cone, 460 U.S. at 18 n. 20, 103 S.Ct. at 938 n. 20, because Mrs. Lops was motivated to file in federal court by an adverse decision of the South Carolina court. See infra Part III.C. Second, Mrs. Lops’s federal suit was an attempt to circumvent federal removal policy, see 28 U.S.C. § 1441(a), because it was identical to her ICARA petition pending in the South Carolina court. See infra Part III.D. Courts of appeals that have addressed these two considerations have found them to be relevant to the Colorado River analysis, either as independent elements of the fourth Colorado River factor—namely, the order in which the fora obtained jurisdiction—or as separate Colorado River factors in their own right.[33] In light of these considerations and the fact that the South Carolina court already has held hearings on the merits of the ICARA petition, see infra Part III.E, I believe that “wise judicial administration,” Colo. River, 424 U.S. at 818, 96 S.Ct. at 1246 (quotation omitted), counsels that we vacate the district court’s judgment and direct the district court to stay Mrs. Lops’s federal action, see infra Part III.F.
C.
Courts must apply the fourth Colorado River factor, like all of the factors, “in a pragmatic, flexible manner with a view to the realities of the case at hand.” 460 U.S. at 21, 103 S.Ct. at 940. Although “priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions,” Moses H. Cone, 460 U.S. at 21, 103 S.Ct. at 940, courts also should consider “the vexatious or reactive nature of either the federal or the state litigation,” id. at 18 n. 20, 103 S.Ct. at 938 n. 20. Indeed, the First,[34] Second,[35] Fifth,[36] Seventh,[37] Eighth,[38] Ninth,[39] and Tenth[40] Circuits all have stated *964 explicitly that the “reactive” character of a federal suit weighs in favor of deferring to the state court under the Colorado River analysis.
On December 2, the South Carolina court informed the parties that it planned to place the children with Mr. Lops’s mother, subject to an adequate security bond, during the pendency of the ICARA proceedings. On December 3, Mrs. Lops filed a motion to reconsider this matter in the South Carolina court, and, on the same day, she filed an identical ICARA petition in the federal district court. This timing leaves little doubt that Mrs. Lops’s federal court suit was a reaction to what she viewed as an unfavorable custody decision by the South Carolina court.[41]
In my opinion, the district court should have viewed the reactive nature of Mrs. Lops’s suit to be an important consideration in favor of deferring to the South Carolina court. Substantial precedent from other circuits supports this view. See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 534 (1st Cir.1991) (stating that the district court did not err in counting “the motivation factor against retaining jurisdiction” where the district court found that the plaintiffs decision to switch to federal court stemmed from the plaintiffs unsuccessful effort to obtain a preliminary injunction in the state court); Nakash v. Marciano, 882 F.2d 1411, 1417 (9th Cir.1989) (affirming the district court’s decision to stay the federal action; stating that the plaintiffs attempt to avoid the state court’s adverse rulings by filing suit in federal court weighed strongly in favor of deferring to the state court); Allen v. La. State Bd. of Dentistry, 835 F.2d 100, 105 (5th Cir.1988) (affirming the district court’s stay where the sequence of events indicated that the plaintiffs federal suit was
“vexatious and reactive”); Fuller Co. v. Ramon I. Gil., Inc., 782 F.2d 306, 309-10 (1st Cir.1986) (applying the Colorado River factors in the declaratory judgment context; affirming the district court’s dismissal, in part due to displeasure at the practice of filing a federal action in reaction to an adverse ruling in the state court); Telesco v. Telesco Fuel & Masons’ Materials, Inc., 765 F.2d 356, 363 (2d Cir.1985) (affirming the dismissal of a federal suit filed by a state court plaintiff; stating that deference to the state court is appropriate where the same party is the plaintiff in both courts and sues in the federal court on the same cause of action after suffering some failures in the earlier state court action); see also Rednerv. City of Tampa, 723 F.Supp. 1448, 1454 (M.D.Fla.1989) (adopting the Magistrate Judge’s recommendation and dismissing the case because, inter alia, the plaintiffs federal action was “reactive” to the state court decision).
The majority relies on the fact that the district court believed that it could resolve the case more quickly than the South Carolina court.[42] The district court, however, apparently did not fully consider the inevitable, time-consuming procedural tangle created by allowing the same case to proceed in two separate fora. Moreover, even if the district court reasonably believed that it could resolve the issue more efficiently than the state court, the district court should have required Mrs. Lops to move to dismiss her state court action before the district court proceeded to evaluate the merits of the case. Allowing Mrs. Lops to litigate both the state and federal actions simultaneously was plainly contrary to “wise judicial administration.” Colo. River, 424 U.S. at 818, 96 S.Ct. at 1246 (quotation omitted); see LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1561 (7th Cir.1989) (affirming the district court’s deci *965 sion to defer to the state court where the plaintiff brought the suit initially in state court and then, without dismissing the state case, filed the same action in federal court).
D.
In my view, the district court also erred by fading to recognize that Mrs. Lops’s federal suit effectively constituted removal to federal court by a state court plaintiff, a result contrary to federal removal policy. See Am. Int’l Underwriters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1260-61 (9th Cir.1988). Even though “priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions,” Moses H. Cone, 460 U.S. at 21, 103 S.Ct. at 940, a repetitive federal suit counsels in favor of deferring to the state court even if the federal action is filed when the state court proceeding is still in its initial stages. See LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1561 (7th Cir.1989).[43]
According to the federal removal statute, 28 U.S.C. § 1441, only defendants have the right to remove cases from state to federal court:
Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States____
28 U.S.C. § 1441(a) (emphasis added). The Supreme Court has held that the predecessor to 28 U.S.C. § 1441, 28 U.S.C. § 71, was intended to eliminate the plaintiffs removal right. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104-09, 61 S.Ct. 868, 870-72, 85 L.Ed. 1214 (1941); H.Rep. No. 1078, 49th Cong., 1st Sess. 1 (1887)(“[I]t is believed to be just and proper to require the plaintiff to abide his selection of a forum.”), quoted in Shamrock Oil, 313 U.S. at 106 n. 2, 61 S.Ct. at 871 n. 2. Likewise, the Ninth Circuit has held that 28 U.S.C. § 1441 “re-fleet[s] a Congressional intent that a plaintiff should not be permitted to alter the forum that it selects to litigate its claim against a particular defendant.” See Am. Int’l Underwriters, 843 F.2d at 1261; see also Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir.1996) (ruling that 28 U.S.C. § 1441 must be construed narrowly, with doubt construed against removal).[44]
Relying on Shamrock and its progeny,[45] the Ninth Circuit has concluded that a plaintiff who first sues in state court may not subsequently file the identical lawsuit in federal court. See Am. Int’l Underwriters, 843 F.2d at 1261 (“After considering the rationale set forth in the removal cases discussed above, we find that AIU should not be permitted to accomplish, by the refiling of its state court complaint, what would clearly be prohibited if AIU tried to remove to state court.”)(emphasis in original).[46] Similarly, *966 the First,[47] Second,[48] and Seventh[49] Circuits all have counseled against exercising federal jurisdiction in cases where a plaintiff whose state court ease is still pending files the same suit in federal court.[50]
I find this reasoning compelling. Accordingly, I would hold that where a plaintiffs state court case is still pending, the plaintiff presumptively may not file the identical suit against the identical defendant in federal court. I therefore believe that the majority’s ruling undermines the purpose of federal removal policy.[51]
Under certain limited circumstances, a district court may be justified in exercising jurisdiction even though the federal plaintiff originally filed the same suit in state court and the state action is still pending. For example, consider a plaintiff who files suit in state court and then, upon being advised by the state court that no hearing on the case would occur for a year, moves in state court to dismiss. If the state court refuses to dismiss the action, the plaintiff should be able to seek relief in federal court despite the pendency of the state court action.
No such extenuating circumstances existed here, however. Mrs. Lops filed suit in district court without first moving to dismiss her state court case. Despite the fact that the district court reached a final judgment on the merits of Mrs. Lops’s ICARA petition on December 22, 1997, it was not until the middle of January of 1998 that Mrs. Lops moved to dismiss her state court action, and even then she did not comply with the timing requirements of the South Carolina court. See South Carolina court’s Order of January 27, 1998, at 2 (stating that Mrs. Lops’s motion to dismiss was filed “within 48 hours” of the South Carolina court’s substantive ICARA hearing on January 16, 1997, in plain violation of the court’s “requisite 5 day notice requirement”). In my view, the district court should not have allowed Mrs. Lops to continue to litigate the same action in both fora. *967 By failing to require Mrs. Lops to move to dismiss her state court action, the district court condoned Mrs. Lops’s abuse of the state and federal court systems.[52] Cf. Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 586 (1st Cir.1991) (stating that federal removal policy was not relevant where the plaintiff first dismissed a defendant from the state suit and then sued that defendant in federal court); Fed. Deposit Ins. Corp. v. Nichols, 885 F.2d 683, 637-38 (9th Cir.1989)(stating that federal removal policy was not relevant where the state suit was no longer pending when the plaintiff filed the federal action).[53]
E.
The Colorado River inquiry, governed by considerations of “wise judicial administration,” must give “regard to conservation of judicial resources.” Colo. River, 424 U.S. at 818, 96 S.Ct. at 1246 (quotation omitted). Accordingly, in reviewing the district court’s refusal to defer pursuant to Colorado River, we must take into consideration the totality of circumstances at the time of our decision, not simply the situation at the time the district court refused to stay the state court action. See Schneider Nat’l Carriers, Inc. v. Carr, 903 F.2d 1154, 1156 n. * (7th Cir.1990); Lumen Constr., Inc. v. Brant Constr. Co., Inc., 780 F.2d 691, 697 n. 4 (7th Cir.1985); Bd. of Educ. of Valley View Community Unit School Dist. No. 365U v. Bosworth, 713 F.2d 1316, 1321-22 (7th Cir.1983). For example, if the state court action remains in its preliminary stages by the time this court is ready to resolve the federal case on appeal, the fourth Colorado River factor would weigh in favor of affirming the district court’s decision not to defer to the state court. See United States v. Adair, 723 F.2d 1394, 1400-07 (9th Cir.1984).
Likewise, if the state court action has proceeded significantly by the time the federal case reaches us on appeal, then we must take this change of circumstances into account, as well. See Ill. Bell Tel. Co. v. Ill. Commerce Comm’n, 740 F.2d 566, 569-71 (7th Cir.1984) (“The purpose of the Colorado River doctrine, however, is the conservation of state and federal judicial resources. Where the progress of the state suit has changed significantly since the motion to stay the federal suit was filed, it would defeat that purpose to ignore the subsequent events.”). The South Carolina court already has assumed jurisdiction over Mrs. Lops’s ICARA petition and, more important, has held its substantive hearings regarding the merits of her petition. Because the South Carolina court is thus poised to issue a ruling in this matter, the factor of “how much progress has been made in the two actions,” Moses H. Cone, 460 U.S. at 21, 103 S.Ct. at 940, does not weigh against deferring to the South Carolina court.
F.
Although the fact that Mrs. Lops’s state and federal cases pose questions of federal law ordinarily would weigh against deferring to the South Carolina court, see Moses H. Cone, 460 U.S. at 23-26, 103 S.Ct. at 941-42, I believe that the reactive nature of Mrs. Lops’s federal suit and Mrs. Lops’s circumvention of federal removal policy compel this court to vacate the district court’s judgment and direct it to stay Mrs. Lops’s federal action. To hold otherwise would be to condone litigation practices completely at odds with “wise judicial administration.” Colo. River, 424 U.S. at 818, 96 S.Ct. at 1246 (quotation omitted).
*968 The reactive nature of a federal suit and the circumvention of federal removal policy are independent elements of the Colorado River analysis.[54] In this case, Mrs. Lops’s federal ICARA petition was both reactive and in violation of federal removal policy. The relevant factors thus weigh quite heavily in favor of deferring to the South Carolina court, see Telesco v. Telesco Fuel & Masons’ Materials, Inc., 765 F.2d 356, 363 (2d Cir.1985) (stating that deference to state court is appropriate where the same party is plaintiff in both courts and sues in the federal court on the same cause of action after suffering some failures in the earlier state court action), regardless of the fact that federal law is at issue in both proceedings, see LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1561 (7th Cir.1989) (affirming the district court’s decision to defer to the state court where the federal plaintiff had brought the same suit initially in the state court and had not dismissed the state case; noting that the state and federal actions were both FELA suits over which state and federal courts exercise concurrent jurisdiction). Because Mrs. Lops’s actions constituted a sufficiently flagrant abuse of the concurrent system of jurisdiction accorded to state and federal courts under ICARA, see 42 U.S.C. § 11603(a), I conclude that the district court abused its discretion by failing to defer to the South Carolina court. Only by vacating the district court’s judgment and directing it to stay Mrs. Lops’s federal action can this court ensure that litigation practices in this circuit remain consistent with “wise judicial administration.” Colo. River, 424 U.S. at 818, 96 S.Ct. at 1246 (quotation omitted).
IV.
In my view, the Full Faith and Credit Act, 28 U.S.C. § 1738, required the district court to accept the Georgia court’s determinations that venue and personal jurisdiction were lacking in Georgia. Even if the district court was not precluded from hearing the case, however, I would hold that the district court abused its discretion by failing to stay the case in deference to the South Carolina court. To rule otherwise not only undermines the authority of the courts of Georgia to issue binding judgments, but also condones Mrs. Lops’s egregious manipulation of ICARA’s system of concurrent jurisdiction.
Therefore, I respectfully dissent.

. The court stated, "All parties stipulated to a transfer of the proceedings verses [sic] dismissal and refiling in the event this Court found no authority for exercising jurisdiction in Georgia.” Georgia court’s Order of November 14, 1997, at 7 n.2. The South Carolina court’s first written order states that Mrs. Lops’s ICARA petition was then filed in the South Carolina court. See South Carolina court's Order of December 11, 1997, at 1-2.

. See R3: 6, 36-37; Appellants' Reply Br. at 3.

. See Michael Lops’s and Anne E. Harrington's Motion to Dismiss Order, December 10, 1997, at 2, 7; Appellants’ Br. at 3; Appellants’ Reply Br. at 8; see also Invoice of John L. Creson attached to Christine Lops’s Motion for Attorney Fees and Costs, January 22, 1998, at 5 ("12/2/97 ... Telephone conference with Judge Nuessle’s office.”). Mrs. Lops does not contest this fact.

. See South Carolina court’s Order of December 11, 1997, at 2-4. The court also provided that ”[i]f the Court finds that there has been a wrongful removal or detention then a further hearing has been scheduled for January 31, [1998,] determine [sic] whether any defense to return of the children to the Petitioner under the Hague [sic] or applicable State or Federal [sic] may be applicable.” Id. at 3. This additional hearing actually was held on February 3, 1998.

. See Appellants’ Br. at 3; Appellants’ Reply Br. at 8. Mrs. Lops does not contest this fact.

. Mrs. Lops did not attempt to dismiss her South Carolina state court action until "within 48 hours of the January 16, 1998,” hearing held by the South Carolina court. See South Carolina court's Order of January 27, 1998, at 2.

. See Michael Lops's Motion to Dismiss, December 19, 1997, at 1, ¶ 3; see also Michael ■ Lops's and Anne E. Harrington’s Motion to Dismiss Order, December 10, 1997, at 3-4, ¶¶ 9-10.

. See Michael Lops’s and Anne E. Harrington’s Motion to Dismiss Order, December 10, 1997, at 3-4, ¶¶ 10, 12.

. See District court’s Order of December 22, 1997, at 7-8 (concluding that an ICARA petition should be filed in the jurisdiction where the children are "located,” see 42 U.S.C. § 11603(b), rather than where they reside).

. I also believe that no exception to Georgia's collateral estoppel doctrine is applicable here. See infra Part II.F.

. See also Wiggins v. Pipkin, 853 F.2d 841, 842 (11th Cir.1988); Rubaii v. Lakewood Pipe of Tex., Inc., 695 F.2d 541, 543 (11th Cir.1983); Deckert v. Wachovia Student Fin. Servs., Inc., 963 F.2d 816, 819 (5th Cir.1992). In each of Wiggins, Rubaii, and Deckert, the court ruled that a state court order dismissing an action for lack of personal jurisdiction barred the plaintiff from bringing a diversity suit based on the same cause of action in federal court in the same state. In those cases, the state courts' personal jurisdiction determinations had preclusive effect on the federal courts because federal courts sitting in diversity determine personal jurisdiction in the same way that the state courts do: by following state law. Similarly, the federal district court in this case had to determine venue and personal jurisdiction in the same way that the Georgia state court did: by examining the ICARA statute and federal due process guarantees. Thus, just as collateral estoppel precluded the federal district courts in Wiggins, Rubaii, and Deckert from revisiting the state courts' jurisdictional rulings, so collateral estoppel should have precluded the federal district court in this case from revisiting the Georgia court’s venue and personal jurisdiction rulings.

. In Parts II.C, II.D, and II.E, infra, I will demonstrate that even if the interstate transfer directive was effective, the Georgia court’s order was a final judgment with corresponding preclusive effect.

. Instead, Georgia law only authorizes interstate transfers in certain narrowly defined situations. For example, O.C.G.A. § 15-11-44 authorizes the transfer of a child to the state of the child's residence if the child is adjudicated to be delinquent under the Uniform Juvenile Court Act. Also, the Uniform Child Custody Jurisdiction Act authorizes Georgia courts to stay child custody cases brought under that Act on the condition that a proceeding "be promptly commenced in another named state,” see O.C.G.A. § 19-9-47(e)(2), and permits Georgia courts to forward relevant information to the receiving court, see O.C.G.A. § 19-9-47(h). See Mulle v. Yount, 211 Ga.App. 584, 586, 440 S.E.2d 210, 213 (1993) (stating that O.C.G.A. § 19-9-47 authorizes interstate transfers).

.Forum non conveniens permits a court to resist imposition upon its jurisdiction even when jurisdiction is authorized by the-letter of a statute. See Smith v. Bd. of Regents of the Univ. Sys. of Ga„ 165 Ga.App. 565, 565, 302 S.E.2d 124, 125 (1983). Forum non conveniens was inapplicable here because no specific Georgia statutory provision authorizes the doctrine in ICARA cases. See Holtsclaw v. Holtsclaw, 269 Ga. 163, 163-64, 496 S.E.2d 262, 263 (1998) (stating that because the courts of Georgia have no inherent authority to decline to exercise jurisdiction granted by the Georgia Constitution, the doctrine of forum non conveniens is only available pursuant to specific Georgia statutory provisions). Forum non conveniens also is inappropriate where, as here, the court determines that it lacks jurisdiction over the action. See, e.g., Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure, § 2.31, at 105 (3d ed. 1985) ("The forum non conveniens rule has application only if the court has jurisdiction, by virtue of ‘minimum contacts' or on some other basis. If the jurisdictional contacts are lacking, the court must dismiss the action for that reason, even if an alternative forum were more convenient.”).
Moreover, even if forum non conveniens had been appropriate here, the doctrine would not have permitted the Georgia court to transfer the case to another state. Id. at 107 ("The courts of one state .., may not transfer cases to courts of another state, and dismissal is the only device for implementing forum non conveniens on an interstate basis.”).

. Contrary to the majority’s characterization of my dissent, my position is not that Mrs. Lops "stipulated that venue was improper and that personal jurisdiction was wanting in Georgia.” Rather, Mrs. Lops's stipulation was based on the Georgia court’s judgment that venue and personal jurisdiction were lacking in Georgia. Because the basis for Mrs. Lops’s stipulation in the Georgia court was inconsistent with her later arguments regarding venue and personal jurisdiction in the district court, the principle of collateral *953 estoppel applies. See Ghrist, 219 Ga.App. at 417, 465 S.E.2d at 504.

. Relying on Culwell v. Lomas & Nettleton Co., 242 Ga. 242, 248 S.E.2d 641 (1978), this court has stated that, under Georgia law, "finality for res judicata purposes is measured by the same standard as finality for appealability purposes” and that the finality requirement is not "relaxed for purposes of collateral estoppel.” See Gresham Park Community Org. v. Howell, 652 F.2d 1227, 1242 & n. 43 (5th Cir. Unit B Aug. 10, 1981); Culwell, 248 S.E.2d at 642, 242 Ga. at 243 (stating that the entry of a judgment as to one or more but fewer than all of the claims and parties is neither an appealable final judgment nor a judgment entitled to res judicata effect unless the trial court makes an express direction for the entry of the final judgment and a determination that no just reason for delaying the finality of the judgment exists); see also Dep’t of Corrections v. Robinson, 216 Ga.App. 508, 509, 455 S.E.2d 323, 324 (1995) ("A superior court order remanding a case back to an administrative tribunal is not an appealable final judgment and thus is not binding for res judicata purposes.”) (citations omitted).
Certain judgments, however, may be final for purposes of preclusion even though they are not appealable final judgments. In Studdard v. Satcher, Chick, Kapfer, Inc., 217 Ga.App. 1, 456 S.E.2d 71 (1995), file court noted that although a voluntary dismissal with prejudice is a final judgment for res judicata purposes, see id. at 2 n. 2, 456 S.E.2d at 73 n. 2 (citing Fowler v. Vineyard, 261 Ga. 454, 405 S.E.2d 678 (1991)), "we have found no cases which clearly hold that a voluntary dismissal with prejudice constitutes a 'final judgment' as that term is used in the appellate practice act,” Studdard, 456 S.E.2d at 73 n. 2. Based on Gresham Park and Studdard, I conclude that judgments that are final for collateral estoppel purposes include, but are not limited to, those judgments that are final for appealability purposes.

. See O.C.G.A. § 19-9-47(e)(2) (authorizing Georgia courts to stay child custody cases brought under the UCCJA on the condition that a similar proceeding be brought in the court of another named state); O.C.G.A. § 19-9-47(h)(permitting Georgia courts to forward relevant information to receiving courts in other states); see also Mulle v. Yount, 211 Ga.App. 584, 586, 440 S.E.2d 210, 213 (1993) (stating that O.C.G.A. § 19-9-47 authorizes interstate transfers).

. Appeals from judgments and orders in all "domestic relations” cases are discretionary. See O.C.G.A. § 5-6-35(a)(2).

. A party seeking discretionary review from an interlocutory order must comply with interlocutory review procedures, such as obtaining from the trial court a certificate of immediate review pursuant to O.C.G.A. § 5-6-34(b). See Scruggs v. Ga. Dep't of Human Resources, 261 Ga. 587, 588, 408 S.E.2d 103, 104 (1991); see also Wieland v. Wieland, 216 Ga.App. 417, 418, 454 S.E.2d 613, 614 (1995) (dismissing a discretionary appeal from an interlocutory order because the appellant failed to comply with interlocutory review procedures).

.Avera thus belies the majority's assertion that “Arnold's reference to ‘discretionary review' could be read to” mean that the interstate transfer order in Arnold was an interlocutory order.

. For example, an intrastate transfer of a criminal case from juvenile to superior court is an *958 appealable final judgment. See Rivers v. State, 229 Ga.App. 12, 13, 493 S.E.2d 2, 4 (1997); J.T.M. v. State of Ga., 142 Ga.App. 635, 636, 236 S.E.2d 764, 765 (1977). As the Georgia Supreme Court has explained,
J.T.M. v. State of Ga. ... deals with the appeal-ability of a transfer order in a criminal context which determines whether the defendant will be treated as a juvenile, and tried for delinquency under the applicable juvenile provisions, or whether he will be treated as an adult and prosecuted under the criminal laws of this state.... [A] criminal transfer order ... is determinative as to the "juvenile” aspect of the case and thus may be final and reviewable.
Fulton County Dep't of Family & Children Servs. v. Perkins, 244 Ga. 237, 239, 259 S.E.2d 427, 428-29 (1978). Distinguishing J.T.M., the Perkins court held that an intrastate transfer of a child custody case from juvenile to superior court is not a final judgment because it "changes the forum but [ ] not [ ] the nature of the proceeding, to wit: the determination of child custody.” See 244 Ga. at 239-40, 259 S.E.2d at 429.
Despite the fact that Perkins involves only an intrastate transfer, the majority cites Perkins for the proposition that an interstate transfer order is not a final judgment because it changes only the forum and not the nature of the proceeding. I believe that the majority’s attempted reliance on Perkins is misplaced. Perkins only indicates that certain intrastate transfer orders are appealable final judgments. Perkins is not relevant, even tangentially, to the question of whether an interstate transfer order renders a case "no longer pending in the court below” under O.C.G.A. § 5-6—34(a)(1).

. The Georgia court’s order, which transferred the case pursuant to Mrs. Lops's stipulation, was similar to a voluntary dismissal with prejudice. A voluntary dismissal with prejudice is a final judgment for preclusion purposes, see Fowler v. Vineyard, 261 Ga. 454, 456, 405 S.E.2d 678, 680 (1991), even though it may not be appealable, see Studdard v. Satcher, Chick, Kapfer, Inc., 217 Ga. App. 1, 2 n. 2, 456 S.E.2d 71, 73 n. 2 (1995) (”[W]e have found no cases which clearly hold that a voluntary dismissal with prejudice constitutes a 'final judgment’ as that term is used in the appellate practice act.”).

. Although the Supreme Court expressly has reserved the question of whether a stay or dismissal is appropriate when the Colorado River doctrine is invoked, see Arizona v. San Carlos Apache Tribe of Ariz., 463 U.S. 545, 570 n. 21, 103 S.Ct. 3201, 3215 n. 21, 77 L.Ed.2d 837 (1983), the Court has hinted strongly that a district court, in deferring to the state court, should keep the federal forum open if necessary, see id.; see also Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983). The choice between a stay and a dismissal will have no practical effect if all issues are in fact resolved by the state proceeding. See Bd. of Educ. of Valley View Community Unit Sch. Dist. No. 365U v. Bosworth, 713 F.2d 1316, 1322 (7th Cir.1983). In the event that issues remain unresolved in the state court, however, only a stay ensures that the federal court will meet its "unflagging duty” to exercise its jurisdiction, see Colo. River, 424 U.S. at 817, 96 S.Ct. at 1246, because, unlike a dismissal, a stay avoids the risk that the plaintiff will be time-barred from reinstating the federal suit, see Lumen Constr., Inc. v. Brant Constr. Co., Inc., 780 F.2d 691, 698 (7th Cir.1985).
Accordingly, I believe that the district court should have stayed, not dismissed, the instant action. See Attwood v. Mendocino Coast Dist. Hosp., 886 F.2d 241, 245 (9th Cir.1989)(holding that a stay is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding); LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1562 (7th Cir.1989) (same); see also Noonan S., Inc. v. County of Volusia, 841 F.2d 380, 383 (11th Cir.1988) ("The dismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources.”).

. The Colorado River doctrine is not a recognized form of abstention. See Colo. River, 424 U.S. at 817, 96 S.Ct. at 1246. Unlike traditional abstention doctrines, which rest on "regard for federal-state relations" and "considerations of proper constitutional adjudication,” the Colorado River doctrine is based on "considerations of *961 '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.’ ” Id. (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 72 S.Ct 219, 221, 96 L.Ed. 200 (1952)). Accordingly, I use the term "deference” rather than "abstention” to describe the Colorado River doctrine. See Fed. Deposit Ins. Corp. v. Nichols, 885 F.2d 633, 637 (9th Cir.1989). But see Fuller Co. v. Ramon I. Gil, Inc., 782 F.2d 306, 309 n. 3 (1st Cir.1986) (describing the Colorado River doctrine as "a fourth category of abstention”).

. In ruling that a district court’s refusal to defer to a state court pursuant to the Colorado River doctrine was not immediately appealable under 28 U.S.C. § 1291, which provides for appeals from "final decisions of the district courts," the Gulfstream Aerospace Court ruled that the refusal is "inherently tentative” and thus is not a conclusive determination, as required by the first element of the three-pronged test established by Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). See 485 U.S at 277-78, 108 S.Ct. at 1137. Notably, the Supreme Court did not address whether the denial of a motion to stay or dismiss an action pursuant to the Colorado River doctrine meets the third prong of the Coopers & Lybrand test: whether the order is "effectively unreviewable on appeal from a final judgment.” Gulfstream Aerospace,. 485 U.S. at 276-78, 108 S.Ct. at 1137 (citing Coopers & Lybrand, 437 U.S. at 468, 98 S.Ct. at 2458).

. Likewise, in affirming district courts' decisions to defer to state courts, courts of appeals have implied that such deference was mandatory, not permissive, in light of the particular circumstances involved. See, e.g., Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins., 843 F.2d 1253, 1260 (9th Cir.1988) ("[I]t is clear that the rationale that prohibits plaintiffs from removing cases to federal court under 28 U.S.C. § 1441 also bars AIU from bringing this repetitive lawsuit in federal court.”) (emphasis added); Levy v. Lewis, 635 F.2d 960, 966 (2d Cir.1980) ("[I]n the special circumstances of this case, sound judicial administration requires refraining from exercising concurrent jurisdiction.”) (emphasis added).

. Neither the federal court nor the South Carolina court has assumed jurisdiction over property-

. Whether the federal forum is inconvenient depends "on the physical proximity of the federal forum to the evidence and witnesses.” Am. Bankers Ins. v. First State Ins., 891 F.2d 882, 885 (11th Cir.1990). The federal court, like the South Carolina court, was close to the relevant evidence and witnesses.

. In Colorado River, the Court ruled that deference to the state court's water rights proceedings was appropriate in light of the McCarran Amendment, 43 U.S.C. § 666, which expressed a federal policy against piecemeal litigation because it allowed the United States to be joined as a parly in state court actions regarding water rights. See 424 U.S. at 819-20, 96 S.Ct. at 1247-48. One could argue that the district court, by hearing Mrs. Lops's ICARA petition, promoted piecemeal litigation because the South Carolina court had before it Mr. Lops’s divorce and custody complaint, as well as Mrs. Lops's ICARA petition. Unlike the McCarran Amendment, however, ICARA does not express a Congressional intent against piecemeal litigation. Thus, the piecemeal litigation factor does not weigh strongly in favor of deferring to the South Carolina court.

. Under Moses H. Cone, the inadequacy of state court proceedings may counsel against deferring to the state court. See 460 U.S. at 26, 103 S.Ct. at 942. The mere adequacy of state court proceedings, however, does not counsel in favor of deferral. See Noonan S., Inc. v. County of Volusia, 841 F.2d 380, 382 (11th Cir.1988). Here, as the majority concedes, both the South Carolina court and the federal district court "adequately could protect the parties' rights." Accordingly, the sixth factor is rendered neutral. See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 536 (1st Cir.1991).

. Mrs. Lops’s ICARA petition is based on federal law, and the presence of federal-law issues weighs against surrendering jurisdiction to state *963 courts. See Moses. H. Cone, 460 U.S. at 26, 103 S.Ct. at 942. This factor, however, is of less significance where, as here, see 42 U.S.C. § 11603(a), the federal law in question grants concurrent jurisdiction to state and federal courts, see Moses H. Cone, 460 U.S. at 26, 103 S.Ct. at 942 (stating that "the source-of-law factor has less significance here than in [Will v. Calvert Fire Ins. Co., 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978)], since the federal courts’ jurisdiction to enforce the Arbitration Act is concurrent with that of the state courts”). Moreover, courts of appeals have upheld district court decisions to defer jurisdiction to state courts even on questions of federal law where the plaintiff’s federal suit is repetitive of the plaintiff’s state suit, see LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1561 (7th Cir.1989) (affirming the district court's decision to defer to the state court where the federal plaintiff had brought the same suit initially in the state court and had not dismissed the state case; noting that the state and federal actions were both FELA suits over which state and federal courts exercise concurrent jurisdiction), or otherwise implicates Colorado River factors, see Am. Disposal Servs., Inc. v. O'Brien, 839 F.2d 84, 86-88 (2d Cir.1988) (affirming the district court's dismissal of a federal civil rights complaint because, inter alia, the state court proceedings were farther advanced).

.Compare Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir.1991) (analyzing both considerations as elements of the fourth Colorado River factor), with Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 363 (2d Cir.1985) (considering "vexatious or reactive nature” of litigation to be a separate Colorado River factor), and Am. Int’l Underwriters, 843 F.2d at 1260-61 (deeming circumvention of federal removal policy to be a separate factor).

. See Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc., 48 F.3d 46, 50, 53 n. 4 (1st Cir.1995); Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir.1991); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 15 (1st Cir.1990), appeal after remand, 947 F.2d 529, 534 (1st Cir.1991); Fuller Co. v. Ramon I. Gil., Inc., 782 F.2d 306, 309-10 (1st Cir.1986).

. See Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 363 (2d Cir.1985).

. See Allen v. La. State Bd. of Dentistry, 835 F.2d 100, 105 (5th Cir.1988).

. See Medema v. Medema Builders, Inc., 854 F.2d 210, 213 (7th Cir.1988); Calvert Fire Ins. Co. v. Am. Mut. Reins. Co., 600 F.2d 1228 (7th Cir.1979), cited in Moses H. Cone, 460 U.S. at 17 n. 20, 103 S.Ct. at 938 n. 20.

. See Federated Rural Elec. Ins. Corp. v. Ark. Elec. Cooperatives, Inc., 48 F.3d 294, 299 (8th Cir.1995).

. See Nakash v. Marciano, 882 F.2d 1411, 1417 (9th Cir.1989).

. See Fox v. Moulding, 16 F.3d 1079, 1082 (10th Cir.1994).

. Information contained in Mrs. Lops’s request for attorney’s fees confirms the causal relationship between the South Carolina’s oral custody ruling of December 2 and Mrs. Lops's immediate decision to file suit in federal court. See Invoice of John L. Creson attached to Christine Lops's Motion for Attorney Fees and Costs, January 22, 1998, at 5-6 ("12/2/97 ... Telephone conference with Judge Nuessle's office; Telephone conference with client and Linda Gardener re: same.... Telephone conference with Dan Butler and Dave Thelen re: possible order returning child to grandmother and district court suit; Receipt and review draft U.S. District court suit.”).

. The majority points to no evidence indicating that the district court actually considered the reactive nature of Mrs. Lops’s federal suit in reaching its determination not to defer to the state court.

. In LaDuke, the Seventh Circuit affirmed the district court's decision to defer the exercise of jurisdiction even though the state court assumed jurisdiction only shortly before the plaintiff filed the same suit in federal court. 879 F.2d at 1561. The court concluded:
The state action apparently did not make a great deal of progress prior to the filing of the federal action____ However, it is important to note in considering this factor in this case that Mr. LaDuke filed both the state action and the federal action. It was his choice to file in state court first. It was also his choice not to dismiss the state action after he commenced the federal action____ [Tlhe relevant Colorado River factors strongly support the district court’s decision not to exercise jurisdiction over Mr. LaDuke’s federal action....

Id.

. The only relevant difference between the statute examined in Shamrock Oil and the current removal statute, 28 U.S.C. § 1441, is that the old statute allowed plaintiff removal in circumstances involving local prejudice against the plaintiff. See Am. Int’l Underwriters, 843 F.2d at 1261 (citing 28 U.S.C. § 71). The current removal statute does not have even this limited right of removal. See 843 F.2d at 1261 (citing 28 U.S.C. § 1441).

. See Or. Egg Producers v. Andrew, 458 F.2d 382, 383 (9th Cir.1972) ("A plaintiff who commences his action in a state court cannot effectuate removal to a federal court even if he could have originated the action in a federal court and even if a counterclaim is thereafter filed that states a claim cognizable in a federal court.”), cited in Am. Int’l Underwriters, 843 F.2d at 1260.

. See also In re Pac. Enters. Secs. Litig., 47 F.3d 373, 376 (9th Cir.1995) (reasserting the rule of Am. Int’l Underwriters that a plaintiff "may not *966 file a lawsuit in state court and then file the same suit in federal court”); accord Fed. Deposit Ins. Corp. v. Nichols, 885 F.2d 633, 637-38 (9th Cir.1989)(stating that removal policy was not relevant where the state suit was no longer pending when the plaintiff filed the federal action).

. See Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir.1991) (stating that the filing of a second lawsuit by the same plaintiff may weigh against the exercise of federal jurisdiction, especially where the plaintiff was attempting to circumvent removal policy); Villa Marina Yacht Sales, Inc. v. Batieras Yachts, 915 F.2d 7, 14 (1st Cir.1990) ("Other courts faced with second lawsuits brought by the same plaintiff have considered that factor relevant in upholding district court decisions to dismiss the federal case.”), appeal after remand, 947 F.2d 529, 536 (1st Cir.1991) (stating that removal policy was not relevant where the plaintiff first dismissed a defendant from the state suit and then sued that defendant in federal court).

. See Telesco v. Telesco Fuel & Masons’ Materials, Inc., 765 F.2d 356, 363 (2d Cir.1985) (affirming the dismissal of the federal suit filed by a state court plaintiff; stating that deference to the state court is appropriate where the same party is plaintiff in both courts and sues in the federal court on the same cause of action after suffering some failures in the earlier state court action).

. See LaDuke v. Burlington N.R.R. Co., 879 F.2d 1556, 1561 (7th Cir.1989) (affirming the district court's decision to defer to the state court where the federal plaintiff had brought the same suit initially in state court and had not dismissed the state case). But see Votkas, Inc. v. Cent. Soya Co., Inc., 689 F.2d 103, 107-08 (7th Cir.1982) (affirming the district court’s decision not to stay a federal diversity action where the plaintiff previously had filed an identical suit in state court in the state where the district court sits).

. See also Lorentzen v. Levolor Corp., 754 F.Supp. 987, 993 (S.D.N.Y.1990) (staying the federal proceeding in light of, inter alia, the plaintiff’s attempt "to change his original choice of forum in violation of the federal policy against plaintiff removal and forum-shopping”); Ryder Truck Rental v. Acton Foodservices Corp., 554 F.Supp. 277, 281 (C.D.Cal.1983) ("Having elected state court, plaintiff should be bound by its choice absent compelling reasons to seek relief in another forum.”); Ystueta v. Parris, 486 F.Supp. 127, 128-29 (N.D.Ga.1980) (stating that this circuit's precedents permit a district court to stay a federal suit that is substantially duplicated by a pending state action between the same parties); Note, "Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River," 44 U. Chi. L.Rev. 641, 666-67 (1977) (stating that the federal removal statute arguably expresses a policy determination limiting plaintiff to initial forum, ”counterbalanc[ing] the obligation to exercise jurisdiction in the subsequent repetitive lawsuit”).

. The majority points to no authority suggesting the propriety of removal by a state court plaintiff to a federal court.

. Counsel for Mr. Lops, made this very argument to the district court orí December 12, 1997. See R3: 12 ("If, in fact, Ms. Lops wanted to be in front of the federal court she has a remedy. All she has to do is dismiss her case, but she hasn’t done that. In fact, she is still filing motions in the South Carolina case.... ”).

. The majority seeks to justify Mrs. Lops's attempt to circumvent federal removal policy on the grounds that Mr. Lops and his mother were the "original forum shoppers” because they “first tried to forum shop this case away from the German courts, where [Mrs. Lops] had initiated custody proceedings.” Such equitable considerations regarding antecedent proceedings in other courts are entirely inapplicable in the Colorado River analysis. Our sole inquiry should be whether the district court's deferral to the South Carolina court was required by principles of "wise judicial administration.” Colo. River, 424 U.S. at 818, 96 S.Ct. at 1246 (citation omitted).

. Because some reactive federal suits are brought by dissatisfied state court defendants, not all reactive federal suits involve the circumvention of federal removal policy. See, e.g., Nakash v. Marciano, 882 F.2d 1411, 1417 (9th Cir.1989). Similarly, not all federal lawsuits brought by state court plaintiffs in violation of federal removal policy are reactive to adverse state court rulings; some such federal lawsuits simply are attempts to achieve two bites at the judicial apple.